Salvador Humberto
**ZEPEDA–MELENDEZ,**
**Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 83–7435.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1984.

Decided Aug. 24, 1984.

Nancy Hormachea, San Francisco, Cal., for petitioner.

Mark C. Walters, Michael P. Lindemann, Dept. of Justice, Washington, D.C., for respondent.

Before MERRILL, GOODWIN and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Salvador Zepeda-Melendez (Zepeda) petitions for review of an order of deportation and denial of an application for withholding of deportation by the Immigration and Naturalization Service. Before the instant petition was filed, Zepeda was deported without notice to his counsel. The government contends that Zepeda's departure from the United States strips the court of jurisdiction to review the underlying deportation order.

We hold that the court has jurisdiction to review a deportation order where an alien's departure was not lawfully executed, and we conclude that deportation without notice to the alien's counsel is not a lawful departure. We find, however, that Zepeda has

failed to demonstrate a clear probability of persecution so as to require withholding of deportation.

## FACTS

Zepeda, a citizen of El Salvador, entered the United States in October 1982, without inspection. He was apprehended on December 13, and remained in custody until his deportation on June 15, 1983. At his hearing, Zepeda conceded deportability, but he applied for withholding of deportation under 8 U.S.C. § 1253(h), alleging that he feared persecution for his political beliefs if deported.

Zepeda was deported once before, in 1981, for overstaying a student visa. Zepeda testified that after his deportation in 1981 he returned to his mother's home in San Salvador and operated a shoe business. Local guerillas apparently considered the Zepeda home to have a strategic location. The guerillas repeatedly visited the Zepeda house, and they requested Zepeda to undergo military training and store munitions in his home.

Government troops also frequented the area, and they too used the facilities at Zepeda's house. Generally, the guerillas visited during the daytime, the government troops at night. Neither knew the other frequented the house.

Zepeda claims he only wanted to remain neutral in the struggle between the government and the insurgents, but he felt "caught between two hot spots" because neither side would leave him alone. To placate the guerillas, Zepeda agreed to store guns in his mother's home, but he left the country before the guerillas actually brought the guns to him. Zepeda contends that he is entitled to asylum as a person seeking to remain neutral in the political struggle, on grounds that he will be subject to persecution by both sides if he is returned to El Salvador.

The immigration judge denied the application, reasoning that Zepeda merely faced the same dangers as every other resident of El Salvador. To withhold deportation in such circumstances, in the judge's view, would "permit the whole populace of El Salvador to remain in this country." In a per curiam opinion, the Board of Immigration Appeals (BIA) affirmed.

On June 15, 1983, while he was in custody, Zepeda was deported without notice to his counsel. The same day, Zepeda's counsel filed the instant petition for review of the BIA's deportation order. The government has moved to dismiss on grounds that Zepeda's deportation deprives the court of jurisdiction to review the underlying deportation order. Zepeda contends that the court maintains jurisdiction to review deportation orders where an alien's departure is not lawfully executed by the government, and Zepeda argues his deportation without notice to counsel was unlawful. On the merits of the application, Zepeda contends that the evidence established a well-founded fear of persecution.

## DISCUSSION

### I. *Jurisdiction*

The government's jurisdictional challenge is based on 8 U.S.C. § 1105a(c), which provides in relevant part:

An order of deportation or of exclusion *shall not be reviewed* by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or *if he has departed from the United States after the issuance of the order.*

(emphasis added). Zepeda's deportation, the government argues, was a "departure" within the meaning of section 1105a(c), and withdraws jurisdiction from the court to review the underlying deportation order.

The courts of this circuit, however, have held that section 1105a(c) is not to be given quite so narrow an interpretation as the government urges on us. The term "departure" is limited to "legally executed departures" when the alien's departure is effected by the government. *Mendez v. Immigration and Naturalization Service*, 563 F.2d 956, 958 (9th Cir.1977).

Under the *Mendez* exception, an alien outside the United States may petition for review of his deportation order when his departure was not "legally executed." *Thorsteinsson v. Immigration and Naturalization Service,* 724 F.2d 1365, 1367 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984) (examining record of the deportation hearing to determine whether the petitioners were unlawfully deported by being denied effective assistance of counsel). *See also Estrada-Rosales v. Immigration and Naturalization Service,* 645 F.2d 819, 820–21 (9th Cir.1981) (allowing a deported petitioner to attack a deportation order based on an invalid conviction); *cf. United States v. Calderon-Medina,* 591 F.2d 529, 530 n. 4 (9th Cir.1979) (defendant charged with illegal reentry permitted to attack collaterally the lawfulness of his underlying deportation where he was deported without being allowed to contact his country's embassy). *Mendez* and its progeny establish that the court has jurisdiction to determine whether Zepeda's departure was lawfully executed.

## II. *Lawful Deportation*

The government does not dispute that Zepeda was deported without actual notice to Zepeda's counsel. It contends, however, that no notice was required because the immigration statutes themselves put Zepeda's counsel on constructive notice that Zepeda could be deported at any time after the Board dismissed his appeal. The government points to section 1105a(a)(7), which expressly allows the Attorney General to execute a deportation even though the

alien has not yet exercised his right to seek judicial review of the deportation order. 8 U.S.C. § 1105a(a)(7).[1] Nothing in the INS regulations, the government contends, requires additional notice to counsel before the government effects deportation, at least where the alien·is in custody.

*Mendez* rejected a similar argument on facts almost identical to those in the instant case. In *Mendez,* the agency notified the alien, but not his counsel, that the alien was to report for deportation. The alien reported as ordered and was deported without notice to his counsel. Several months later, when the attorney filed a petition for review of the underlying deportation order, the INS argued that the alien's deportation deprived the court of jurisdiction. The court, however, held that it had jurisdiction to consider the lawfulness of the deportation, and it concluded that the deportation was unlawful:

> Here, failure to notify appellant's counsel amounts not only to a violation of 8 C.F.R. 292.5(a), but also to appellant's right to counsel as provided in 8 U.S.C. § 1252(b).

*Mendez,* 563 F.2d at 959.

The government distinguishes *Mendez* as involving a petitioner who was not in government custody at the time of his deportation. Under the government's theory, INS regulations require notice of deportation only when the alien is at large, not when he is , in custody. *See* 8 C.F.R. § 243.3.[2] Because an alien in custody is not entitled to notice, neither is his attorney. *See* 8 C.F.R. § 292.5(a).[3] The govern-

---

**1.** 8 U.S.C. § 1105a(a)(7) provides in relevant part:

> (7) nothing in this section shall be construed to require the Attorney General to defer deportation of an alien after the issuance of a deportation order because of the right of judicial review of the order granted by this section ....

**2.** 8 C.F.R. § 243.3 provides in relevant part:

> Once an order of deportation becomes final, an alien, *not in the physical custody of the Service,* shall be given not less than 72 hours advance notice in writing of the time and place of his surrender for deportation.... The advance notice requirement above does

not preclude taking an alien into custody at any time, including any time within the 72 hour period .... However, in such an instance, the alien's deportation shall not be effected prior to the expiration of 72 hours from the time of apprehension or of the 72 hour notice period, whichever is less.

(emphasis added).

**3.** 8 C.F.R. § 292.5 provides in relevant part:

> (a) Representative capacity. Whenever a person is required by any of the provisions of this chapter to give or be given notice ... such notice ... shall be given by. or to ... the attorney or representative of record ....

ment cites no authority supporting this interpretation of its regulations.

■ *Mendez,* however, was not based only on the INS regulations. The court held that notice to counsel was required by section 1252(b) of the Immigration and Naturalization Act itself, 8 U.S.C. § 1252(b), which grants the alien a statutory right to counsel.[4] Unlike the INS regulations, section 1252(b) makes no distinction between the representation rights of aliens at large and those in custody, and we are unpersuaded that any such distinction is warranted. At a minimum, an alien's counsel must be made aware of the alien's deportation in order to provide representation. We hold, therefore, that the agency's deportation of Zepeda without notice to his counsel violated Zepeda's section 1252(b) right to counsel.[5] Consequently, the government's deportation of Zepeda was not a legally executed departure, and we therefore have jurisdiction to review the underlying deportation order.

### III. *Clear Probability of Persecution*

■ In 1980, Congress amended section 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1253(h), to require the Attorney General to withhold deportation if he determines that an alien's life or freedom would be threatened in his home country because of his race, religion, nationality, political opinion or membership in a social group.[6] *See* Refugee Act of 1980, Pub.L. No. 96–212, § 203(e), 94 Stat. 102, 107 (1980). We review factual findings by the agency regarding an alien's eligibility for withholding of deportation under the substantial evidence test. *McMullen v.*

*Immigration and Naturalization Service,* 658 F.2d 1312, 1316 (9th Cir.1981).

■ Zepeda does not contend he will be persecuted because of his race, religion or nationality. He seeks refuge only on grounds of his wish to remain politically neutral in the struggle that has divided his country. In order to invoke section 243(h), therefore, Zepeda must prove four elements:

1. A likelihood of persecution; i.e., a threat to life or freedom.

2. Persecution by the government or by a group which the government is unable to control.

3. Persecution resulting from the petitioner's political beliefs.

4. The petitioner is not a danger or a security risk to the United States.

*McMullen,* 658 F.2d at 1315. Zepeda must demonstrate a clear probability that he will be subject to persecution if deported. *Immigration and Naturalization Service v. Stevic,* —— U.S. ——, ——, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984).

■ In essence, Zepeda contends that he will be persecuted by both sides in El Salvador because his mother owns a house in a strategic location, and because Zepeda himself is a male of military age who has sworn allegiance to neither faction. Although Zepeda's reluctance to return to his wartorn nation is understandable, neither of his contentions is a proper ground for refuge under section 243(h).

Recent Ninth Circuit decisions repeatedly have rejected applications for relief under section 243(h) based on generalized allega-

---

**4.** Section 1252(b) provides in relevant part:
Proceedings [to determine deportability] before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations ... as the Attorney General shall prescribe. Such regulations shall include requirements that—
(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose ....

**5.** Because we find that notice to counsel was required by the statute, it is unnecessary to

determine whether notice might be required under constitutional principles of due process.

**6.** 8 U.S.C. § 1253(h) provides in part:
(1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

tions of persecution resulting from the political climate of a nation. In *Chavez v. Immigration and Naturalization Service,* 723 F.2d 1431 (9th Cir.1984), Lopez, like Zepeda, a citizen of El Salvador, requested asylum partly on grounds that his ownership of a gun made him a target for guerillas who might want his weapon, and his status as a young urban male unallied with either faction left him vulnerable to persecution by both sides. The court rejected both contentions. Danger arising from mere gun ownership, the court held, did not qualify as persecution under section 243(h). *Id.* at 1433. Further, Lopez' status as a young urban male was not specific enough for political asylum; the widespread violence affecting all Salvadorians was not persecution within the meaning of 8 U.S.C. § 1253(h). *Id.* at 1434. *See also Martinez-Romero v. Immigration and Naturalization Service,* 692 F.2d 595 (9th Cir.1982) (rejecting the contention that no one should be returned to El Salvador because of the present anarchy).

Zepeda's alleged danger from his family's ownership of a strategically located house, like Lopez' ownership of a gun, does not qualify as persecution based on "race, religion, nationality, membership in a social group, or political opinion" within the meaning of 8 U.S.C. § 1253(h). To the extent that Zepeda also faces danger because of his noncommitment to either side, his danger is the same as faced by other Salvadorians. It is not specific enough to mandate withholding of deportation. We conclude, therefore, that substantial evidence supports the agency's denial of Zepeda's application for withholding of deportation.

## CONCLUSION

We hold that deportation of an alien without notice to his counsel is not a legally executed departure within the meaning of 8 U.S.C. § 1105a(c), and does not strip the court of jurisdiction to review the deportation order whether or not the alien was in custody at the time of deportation. Zepeda, however, has failed to demonstrate a clear probability of persecution based on the grounds enumerated in 8 U.S.C. § 1253(h), and consequently is not entitled to withholding of deportation. The petition for review is DENIED.