**Jose Antonio
ESPINOZA–MARTINEZ, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 83–7916.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1984.

Decided March 8, 1985.

Ferguson, Circuit Judge, filed a dissenting opinion.

Delfino Varela, Los Angeles, Cal., for petitioner.

Dzintra I. Janavs, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before SNEED, ANDERSON, and FERGUSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Jose Antonio Espinoza-Martinez petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his requests for political asylum and withholding of deportation. We find that Espinoza has not established either a well-founded fear of persecution or a clear probability of persecution. Consequently, we hold that the decision of the BIA is supported by substantial evidence.

## I. BACKGROUND

Espinoza is a native and citizen of Nicaragua. He entered the United States without inspection in March of 1980. Espinoza conceded deportability, but applied for a grant of asylum, which was also considered an application for withholding of deportation.

At the hearing below, Espinoza testified that he had fought against the Somoza government. However, since Somoza's overthrow, Espinoza testified that he has become increasingly concerned about the amount of Cuban influence in the new government. Espinoza says that he is opposed to communism. Further, Espinoza says that he served in the Sandinistan militia, and in December 1979 was "confined to quarters" as a punishment for insubordination and comments about the country's political problems. It was shortly after this alleged punishment that Espinoza says he left Nicaragua. Although he was given a passport by the government in order to leave the country, he now claims that he is wanted for desertion and would be tortured, and possibly killed, if he were to return to Nicaragua. Espinoza also alleges that after his participation in an anti-government rally he was followed, and that two friends who also attended the rally were later tortured and killed.

## II. STATUTORY FRAMEWORK

Congress has enacted a statutory framework under which these cases must be considered. The Supreme Court and the various circuit courts have grappled with the statutes in order to clarify the intended

burdens of proof and standards of review, so that judicial consideration of these immigration cases can be consistently applied. Our constitutional duty is to follow that precedent.

■ The government has the initial burden of establishing the alien's deportability by clear and convincing evidence. *Woodby v. INS*, 385 U.S. 276, 277, 87 S.Ct. 483, 484, 17 L.Ed.2d 362, 364 (1966); *accord INS v. Stevic*, —— U.S. ——, —— n. 19, 104 S.Ct. 2489, 2498 n. 19, 81 L.Ed.2d 321, 334 n. 19 (1984). Many times, as in the case at bar, the alien admits deportability, thereby satisfying the government's burden in this regard. Nevertheless, the alien can obtain relief from deportation if he or she establishes certain conditions.

An alien may apply for "asylum" in the United States under § 208(a). 8 U.S.C. § 1158(a). The alien may also apply for a "withholding of deportation" under § 243(h). 8 U.S.C. § 1253(h). When an application for asylum is made after the start of deportation proceedings, that application is automatically considered as a request for withholding of deportation under § 243(h) as well. 8 CFR § 208.3(b) (1983). The Supreme Court has noted that this procedure merely eliminates the need to file a separate request for relief under § 243(h) if a § 208 application has been filed. *Stevic*, —— U.S. at —— n. 18, 104 S.Ct. at 2497 n. 18, 81 L.Ed.2d at 333 n. 18. Furthermore, the Court points out that, on the other side of the coin, "a § 243(h) request is not automatically also considered as a § 208 request under the statutes." *Id.*

■ Section 208 asylum is a discretionary form of relief. In order to be eligible for asylum, the alien must meet the definition of refugee contained in § 101(a)(42)(A). 8 U.S.C. § 1101(a)(42)(A). Paraphrasing this definition, an alien is a refugee when he cannot return to his native country because of a "well-founded fear of persecution on account of race, religion, nationali-

ty, membership in a particular social group, or political opinion...." It is the alien's burden to present sufficient evidence to establish a *prima facie* case that there is a well-founded fear of such persecution. It is also the alien's burden to show that his evidence is credible. *Saballo-Cortez v. INS*, 749 F.2d 1354, 1356 (9th Cir.1984).

■ Even when an alien meets this burden, and is thus a refugee, the alien is not automatically entitled to asylum. The decision whether or not to grant an application, once the alien has met the refugee definition, rests in the discretion of the Attorney General under § 208(a). *Stevic*, —— U.S. at —— n. 18, 104 S.Ct. at 2497 n. 18, 81 L.Ed.2d at 333 n. 18. Logically, then, our review of an asylum decision takes place on two levels. The initial decision of whether the alien has met the refugee definition can be reviewed under the substantial evidence test. The ultimate grant or denial of asylum, however, must be reviewed under the abuse of discretion standard.

■ Unlike asylum, withholding of deportation under § 243(h) is not a discretionary form of relief. If the alien meets his burden under § 243(h) the Attorney General cannot deport the alien. Under this burden, the alien must show a "clear probability" that if he is returned to his country, he will be persecuted to the extent that his "life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." *Stevic*, —— U.S. at —— – ——, 104 S.Ct. at 2501, 81 L.Ed.2d at 337–338. The "clear probability" standard means that it is "more likely than not" that the alien would be subject to persecution. *Id.*, —— U.S. at ——, 104 S.Ct. at 2498, 81 L.Ed.2d at 334. We review withholding of deportation decisions under the substantial evidence standard. In other words, we can "reverse only if the trier of fact's conclusion that the alien failed to prove a clear probability of persecution

lacks substantial reasonableness." *Saballo-Cortez*, at 1360 n. 4. See also *Zepeda-Melendez v. INS*, 741 F.2d 285, 289 (9th Cir.1984); *McMullen v. INS*, 658 F.2d 1312, 1316 (9th Cir.1981).

In order to meet either the "well-founded fear" or "clear probability" burden, it is necessary for the alien to introduce some specific evidence to show that such persecution, if carried out, would be directed toward him as an individual. See *Zepeda-Melendez*, 741 F.2d at 290; *Chavez v. INS*, 723 F.2d 1431, 1434 (9th Cir.1984); *Shoaee v. INS*, 704 F.2d 1079, 1084 (9th Cir.1983); *Sanchez v. INS*, 707 F.2d 1523, 1526–1527 (D.C.Cir.1983). Exactly what amount of specific evidence is required is dependent upon the facts and circumstances of each case. It is clear, however, that while general information and evidence concerning the oppressive conditions and violence in a particular country is relevant to support specific information, *Zavala-Bonilla v. INS*, 730 F.2d 562, 564 (9th Cir.1984), undocumented claims of persecution may amount to nothing more than the alien's statement of opinion. *Moghanian v. U.S. Dept. of Justice, Etc.*, 577 F.2d 141, 142 (9th Cir.1978); *Pereira-Diaz v. INS*, 551 F.2d 1149, 1154 (9th Cir.1977).

## III. DISCUSSION

Examining the record in this case, in light of the standard of review, we hold that petitioner has not established either a well-founded fear or a clear probability of persecution. Espinoza submitted three documents in an effort to support his allegations of persecution. Although there is some doubt as to the reliability of the documents, even when we assume their validity they do not provide the requisite objectivity that petitioner needs in order to succeed.

One document purports to order Espinoza confined to his quarters, with a warning that the confinement could be repeated for insubordination or comments about political issues. Nowhere, however, does it state that any political comments led to Espinoza's initial confinement. Another of the documents is apparently a warrant for Espinoza's arrest on charges of desertion. Yet, there is no indication that this desertion charge threatens the type of persecution that we are to be concerned with in this proceeding. Other than petitioner's own unsubstantiated allegation, there is no evidence to indicate that this is other than a routine, nonpolitical crime of desertion.

At the same time, we feel that Espinoza's claim of future persecution is contradicted by the relatively minimal punishment that he alleges he received for his political beliefs. In today's Nicaragua, confinement to quarters appears to be a mild punishment for any type of political dissension, especially dissension by military personnel. And, we note again that there is no objective evidence to show petitioner's alleged confinement was in fact due to his political opinion. Finally, it seems that Espinoza acquired a Nicaraguan passport without difficulty, in order to leave the country, a fact which also cuts against petitioner's argument that he will be individually persecuted upon return. *Saballo-Cortez*, at 1359 (proper to infer not subject to persecution).[1]

Consequently, we cannot agree with Espinoza that he has established even a well-founded fear of persecution. We find that the BIA's decision is supported by substantial evidence. Accordingly, the petition for review is DENIED and the decision of the BIA is AFFIRMED.

---

**1.** This court's recent decision in *Bolanos-Hernandez v. INS*, 749 F.2d 1316 (9th Cir.1984), is clearly distinguishable on the facts. In *Bolanos*, after spurning recruitment into guerrilla forces, the alien was directly threatened to either leave the country or be killed. The court noted that neither the Immigration Judge nor the BIA questioned the petitioner's credibility or ex-

pressed any doubt about whether the threat had actually been made. No such direct threat is present at bar. In addition, as we have discussed, the evidence at bar is too speculative and unreliable to infer that any potential persecution would be based upon petitioner's political beliefs.

**FERGUSON, Circuit Judge, dissenting:**

The majority opinion carefully restates the law as it applies to appeals from the Board of Immigration Appeals denying requests for political asylum and withholding of deportation. Yet when it comes time to apply the facts of the case to the carefully documented rules of law, the majority fails to discharge the constitutional duty that it outlines.

I agree with the majority's statement of the law. An alien cannot be deported if he shows a clear probability that if he is returned to his country he will be persecuted to the extent that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1253(h).

When it attempts to apply the law to this case, however, the majority builds a syllogism whose implicit but unstated major premise contradicts the law that had just been so carefully presented, and whose minor premise lacks any basis in fact. Thus, the conclusion reached by the majority is necessarily invalid. The majority reasons: (1) section 243(h) mandates that deportation be withheld only if the deportee faces threats of severe deprivation of freedom; (2) Espinoza-Martinez faces confinement to quarters and, in "today's Nicaragua, confinement to quarters appears to be a mild punishment for any type of political dissension, especially dissension by military personnel"; (3) therefore, he is not entitled to the protection of section 243(h).

The major premise misstates the law. Section 243(h) does not state that the threat to freedom must be severe. The words are "freedom would be threatened."

The minor premise combines a new "fact" that arises from pure conjecture with a personal opinion about the relative severity of the threat to "life or freedom"

that Espinoza-Martinez faces. Such personal opinions and conjecture have no place in the judicial decisionmaking process. The conclusion, therefore, is contrary to the congressional mandate.

I therefore dissent. To hold that freedom is relative in Nicaragua is to violate the court's constitutional duty. The petitioner's freedom was taken away once and there is a clear probability that it will be taken away again if he is deported.