Jose Doney ARGUETA, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 83–7492.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 5, 1984.

Decided May 7, 1985.

Poole, Circuit Judge, filed a dissenting
opinion.

Elisco Sisneros, Paula D. Pearlman, El
Centro, Cal., for petitioner.

Madelyn E. Johnson, Dept. of Justice,
Washington, D.C., for respondent.

Before TUTTLE,* HUG, and POOLE,
Circuit Judges.

HUG, Circuit Judge:

Jose Doney Argueta petitions for review
of the Board of Immigration Appeals's (the
"Board") denial of his claims for political
asylum under 8 U.S.C. § 1158(a) and for
withholding of deportation under 8 U.S.C.
§ 1253(h). Because the Board's order was
not supported by substantial evidence, the
petition is granted.

FACTS

Argueta is a native and citizen of El
Salvador. He last entered the United
States on approximately September 26,
1982. On September 28, 1982, deportation
proceedings were instituted against him.

At his initial deportation hearing, Argue-
ta conceded deportability, but filed an ap-
plication for political asylum and withhold-
ing of deportation. Argueta submitted
oral testimony and newspaper articles in
support of his application. In particular,
Argueta testified that in December of 1979,
he was threatened in his home by four men
who accused him of being a member of the
FPL, a guerrilla organization, and stated
that if he did not leave the country, he
would disappear because he was the "next
one." The next day he saw a close friend,

* The Honorable Elbert Parr Tuttle, Senior United
States Circuit Judge for the Eleventh Circuit

Court of Appeals, sitting by designation.

Jose Abel Figueroa, to whom he refers as his brother-in-law, taken from his home by the same men who had previously threatened Argueta.[1] According to Argueta, the men belonged to a rightist group known as the "Squadron of Death." Later, Argueta discovered Figueroa's body and found that he had been tortured and killed. Argueta left El Salvador the following day. ·

The immigration judge ("IJ") denied Argueta's applications for political asylum and withholding of deportation. The IJ's decision was based primarily on a finding that Argueta's testimony lacked credibility. It is apparent from the record that the IJ made several important factual errors:

(a) The IJ stated that Argueta was not specific in regard to the source of the danger and that his testimony as to this was "rather vague." In fact, Argueta testified that he could identify the individuals who killed his "brother-in-law" as the "death squad" because they drove red land rovers. Further, while he honestly admitted that he could not identify the individuals who killed his brother-in-law as the same individuals who had threatened him the day before because he could not see them clearly on the day of the threat, he did clearly testify that the threat was made to him, that the killing occurred the next day, and that he believes that the individuals who threatened him were the same as those who killed his brother-in-law.

(b) The IJ found that Argueta was threatened on the day after the killing of Figueroa. In fact, Argueta testified that he was threatened on the day before the killing.

(c) The IJ stated that, in response to a question as to how the killing of his brother-in-law affected him, Argueta answered "nothing." In fact, Argueta testified that he believed the death would affect him because on the day before the killing, he had been threatened and accused of being a member of the FPL.

(d) The IJ stated that Argueta testified that the individuals who threatened him merely accused him of being in "a guerilla organization." In fact, Argueta testified that the individuals accused him of being a member of the FPL.

Argueta appealed to the Board, alleging that he had met his burden of proof and, alternatively, that the IJ's credibility determination violated Argueta's due process rights. The Board affirmed, holding that, even if Argueta's testimony were accepted as true, he had failed to meet his burden of proof.

Argueta timely filed this petition for review of the Board's order.

## DISCUSSION

 In order to be entitled to withholding of deportation, the petitioner must establish that his life or freedom would be threatened in his home country because of his race, religion, nationality, political opinion, or membership in a particular social group. 8 U.S.C. § 1253(h) (1982). The petitioner must establish a clear probability of persecution if deported. *Immigration and Naturalization Service v. Stevic*, —— U.S. ——, ——, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (1982), permits the Attorney General to grant asylum if the petitioner establishes that he is unwilling or unable to avail himself of the protection of his home country because of a well-founded fear of persecution. 8 U.S.C. § 1101(a)(42)(A) (1982). We review under the substantial evidence standard. *Zepeda–Melendez v. I.N.S.*, 741 F.2d 285, 289 (9th Cir.1984); *Zavala-Bonilla v. Immigration and Naturalization Service*, 730 F.2d 562, 564 (9th Cir.1984). The Supreme Court has indicated, and we have recently held, that the well-founded fear standard is "more generous" than the clear

---

1. There is some confusion in the record as to what Argueta meant by "brother-in-law," quite possibly due to problems in translation. It would appear that Figueroa was living with his sister although not actually married to her. The point, however, is that there was a close family association. ·

probability of persecution standard that applies to withholding of deportation claims. *Stevic,* —— U.S. at ——, 104 S.Ct. at 2489; *Bolanos-Hernandez v. Immigration and Naturalization Service,* 749 F.2d 1316 (9th Cir.1984).

In *Bolanos-Hernandez,* a case with facts similar to those in the present case, we recently determined the evidentiary requirements for applications for withholding of deportation and asylum. In *Bolanos-Hernandez,* the petitioner, a native and citizen of El Salvador, had refused to join a leftist guerrilla organization. The petitioner had chosen to remain politically neutral. The guerrillas threatened him, telling him that they would kill him if he did not join their forces. *Bolanos-Hernandez,* 749 F.2d at 1318. The petitioner was aware of the fact that the guerrillas had killed five of his friends and had used similar tactics on his brother. *Id.* We concluded that this testimony, viewed in the context of the general climate of violence in El Salvador, established a clear probability of persecution, entitling the petitioner to withholding of deportation. *Id.* at 1322–24. We held that the petitioner's conscious choice to remain politically neutral constituted a "political opinion" within the reach of sections 243(h) and 208(a). *Id.* at 1324–26.[2]

■ In the present case, the Board assumed that Argueta's story was true, yet failed to find this sufficient to establish either a clear probability or a well-founded fear of persecution. We cannot agree. Argueta articulated specific reasons why he, in particular, would be subject to persecution if he were forced to return to El Salvador. Argueta provided evidence of a direct threat against him based upon a belief by the "death squad" that he was a part of a political organization. The force of this threat was heightened by the fact that the next day his close friend and "brother-in-law" was tortured and killed by the very same men who had threatened Argueta. As did the petitioner in *Bolanos-Hernandez,* Argueta has provided evidence that "clearly shows that the [death squads] have the ability and the will to carry out their threats." *Bolanos-Hernandez,* 749 F.2d at 1324.

In addition, Argueta's testimony established the existence of a political opinion. In its findings, the IJ observed that "[t]he respondent testified that he had a political opinion but it was not with the government or with the guerrillas, however, he did not state what it was that he supported on either side...." It is apparent that the IJ erroneously assumed that it was necessary for Argueta to prove his allegiance to a particular political faction. Argueta's testimony indicated that he had affirmatively chosen to remain politically neutral.[3] We therefore conclude that Argueta's decision to remain neutral constituted an expression of political opinion.

We reverse the Board's conclusion that, even assuming the truth of Argueta's testimony, he had not established either a clear probability or a well-founded fear of persecution sufficient to entitle him to withholding of deportation or eligibility for asylum. We therefore remand to the Board to make the required credibility findings in order to determine his entitlement to withholding of

---

**2.** We observed that, in some instances, a passive failure to join a political side may not amount to an expression of political opinion. However, since the petitioner affirmatively chose a neutral political stance, it was unnecessary to decide whether a "purely negative choice" to remain politically neutral renders one eligible for withholding of deportation or asylum. *Bolanos-Hernandez,* 749 F.2d at 1326 n. 18.

**3.** At his deportation hearing, Argueta testified as follows:

Q: Do you have a political opinion?
A: Yes, I have it. ·

Q: What is that?
A: That I am not in agreement either with the guerrillas or the government.
Q: Do you support or in any way help either side?
A: No, none.
Q: What effect, if any, will this position have on your situation in El Salvador?
A: The effect would be I'm not in agreement with any of them, both and as much as the guerrillas would ask me to help them, I wouldn't present my services. Not even for the guerrillas or the government.

deportation or eligibility for asylum and the exercise of its discretion.[4]

REVERSED.

POOLE, Circuit Judge, dissenting.

I respectfully dissent.

Factual findings by the Immigration Judge in a deportation proceeding must be upheld if supported by substantial evidence. *Zepeda-Melendez v. INS*, 741 F.2d 285, 289 (9th Cir.1984). Here the Immigration Judge found petitioner's allegations of threats of persecution lacking credibility. The majority has chosen to substitute its own findings of fact for those of the Immigration Judge. According the deference owed the findings of the Immigration Judge, I conclude that he did not err in concluding that petitioner's allegations did not demonstrate either a clear probability of persecution or a well-founded fear of persecution.

Further, the majority overlooks this court's holding in *Zepeda*. There we held that a petitioner who alleged he faced danger because of his non-commitment to either side, faced the same danger that all of his countrymen faced. The court concluded that he was unable to demonstrate a clear probability of persecution. As the facts in the instant case are identical, the majority's holding clearly contravenes *Zepeda*.

---

**4.** The dissent mischaracterizes our holding by stating that we are substituting our own findings of fact for those of the IJ. Although we point out weaknesses in the findings of the IJ, the point of the opinion is that it is the credibility findings of the BIA that we must review. The BIA did not adopt the credibility findings of the IJ (perhaps detecting the same weakness we point out) but, instead, assumed the truth of Argueta's testimony and still denied the petition. It is this conclusion that we hold to be error. We are remanding for the BIA to make credibility findings; we are not substituting our own.