Mercedes **VILORIO–LOPEZ**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 86–7547.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1987.

Decided July 26, 1988.
As Amended Oct. 3, 1988.

Molly McClure, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for petitioner.

Eileen A. Carty, Office of Immigration Litigation, Civil Div., Washington, D.C., for respondent.

Before SCHROEDER, PREGERSON and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

Mercedes Vilorio–Lopez petitions for review of the Board of Immigration Appeals' dismissal of his request for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h).

Vilorio–Lopez is a native of El Salvador who entered the United States on May 23, 1985. The next day, the INS issued an order to show cause why he should not be deported. On June 3, 1985, he requested political refuge in the United States. At his deportation hearing in July, he offered his own testimony, and that of his cousin, in support of his application for asylum and withholding of deportation. The petitioner and his cousin each testified that both a right-wing death squad and left-wing guerrillas had threatened Vilorio–Lopez. The petitioner testified that he is a supporter of the Duarte government and was a member of the Salvadoran Army for one month. On the occasion that twenty armed guerrillas arrived at his house looking for him by name, his cousin of approximately the same age was present but was not sought, threatened, or harmed.

There were inconsistencies in the testimony of petitioner and his cousin concerning the date of the death squad incident, the length of time the men were sheltered from the death squad, and whether they paid for their accommodation. However, the record reflects Vilorio–Lopez's limited command of the English language as well as his difficulty in understanding the questions posed to him at the hearing. Both the petitioner and his cousin stated that they were chased by men on foot, that the death squad carried 45's, that they were sheltered by a third man in his home, and that the incident occurred in the evening.

The Immigration Judge denied the petitioner's application. He found the testimony of neither the petitioner nor his cousin credible due to the inconsistencies. The Immigration Judge did not make a finding that either petitioner or his cousin was an incredible witness. The credibility finding was confined to the credibility of the testimony relating to the death squad incident. The Immigration Judge stated that, because of the inconsistencies, he could not find either version "particularly credible."

The Immigration Judge's doubts were not based upon an assumption of collusion between the two witnesses, for they did not have an opportunity to meet and fabricate

stories of threats. The Immigration Judge specifically found that "it can be shown that there certainly was not a discussion for a common story ... [and the cousin] was not present during the testimony of the respondent." Nevertheless, based upon his credibility determinations, the IJ concluded no incidents of persecution had ever occurred and that the petitioner had not demonstrated a well-founded fear of persecution.

Vilorio–Lopez appealed to the Board of Immigration Appeals, and on June 27, 1986, the BIA dismissed his appeal in a written opinion. It made no specific reference to credibility but apparently accepted the Immigration Judge's analysis, concluding that "we find the decision of the immigration judge to be proper and correct." On review in this court, the petitioner asks us to set aside the Board's decision because the credibility findings lack support. He asks us to hold that he has established a "clear probability of persecution," qualifying him for withholding of deportation, as well as the lesser showing of a "well-founded fear of persecution" requisite for discretionary asylum.

■ The Attorney General may grant asylum to an alien meeting the definition of a "refugee." 8 U.S.C. § 1158(a). The term "refugee" means

> any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Thus, the "well-founded fear" standard governs the determination of eligibility for asylum, and such relief is discretionary with the Attorney General. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1211 & n. 5, 94 L.Ed.2d 434 (1987).

■ The "well-founded fear" standard requires that (1) the alien has a subjective fear, and (2) this fear has enough of a basis that it can be considered well-founded. *Blanco–Comarribas v. INS,* 830 F.2d 1039, 1042 (9th Cir.1987); *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1452–53 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed. 2d 434 (1987). The evidence must demonstrate more than a "widespread violence affecting all Salvadorians." *Zepeda–Melendez v. INS,* 741 F.2d 285, 290 (9th Cir. 1984). The alien "must present 'specific facts' through objective evidence to prove either past persecution or 'good reason' to fear future persecution." *Cardoza–Fonseca,* 767 F.2d at 1453.

■ In implementing this standard, the courts have noted repeatedly that the "well-founded fear" standard is more generous than the "clear probability" standard required for withholding of deportation. *See, e.g., INS v. Stevic,* 467 U.S. 407, 425, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984); *Artiga Turcios v. INS,* 829 F.2d 720, 724 (9th Cir.1987); *Cardoza–Fonseca,* 767 F.2d at 1453. Accordingly, although the alien's evidence may fall short of establishing a "clear probability" of persecution, the same evidence may qualify the alien for a discretionary grant of asylum.

Withholding of deportation is governed by 8 U.S.C. § 1253(h). The Attorney General "shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h).

■ Unlike asylum, withholding of deportation is not discretionary; if the alien meets the statutory test, the Attorney General cannot deport the alien. *Turcios v. INS,* 821 F.2d 1396, 1398 (9th Cir.1987); *Espinoza–Martinez v. INS,* 754 F.2d 1536, 1539 (9th Cir.1985). The courts have held that an alien meets the statutory test by demonstrating a "clear probability of persecution." *Cardoza–Fonseca,* 767 F.2d at 1452. The term "clear probability" requires "a showing that there is a greater-than-fifty-percent chance of persecution." *Id.*

■ In demonstrating a "clear probability of persecution," the alien must show that "(1) he or those similarly situated are at a greater risk than the general population and (2) that the threat to him is a serious one." *Platero–Cortez v. INS*, 804 F.2d 1127, 1130 (9th Cir.1986). "There must be some factual support, some specific evidence, or some concrete evidence, to support the alien's claim that persecution likely would be directed toward him as an individual." *Id.* Again, general evidence of violence in the alien's native country is insufficient alone to establish a clear probability of persecution. *Canjura–Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985).

■ A key factor in finding evidence sufficient for withholding of deportation is whether harm or threats of harm were aimed against the petitioner specifically. For example, we refused to hold that a "clear probability of persecution" had been demonstrated when (1) the petitioner's mother owned a house in a strategic location, and petitioner was a male of military age, *Zepeda–Melendez*, 741 F.2d at 287; (2) the petitioner testified that he had engaged in extensive political activity, but presented no evidence that the government was aware of his political activities and he was never harassed, arrested, or charged, *Garcia–Ramos v. INS*, 775 F.2d 1370 (9th Cir. 1985).

On the other hand, when the petitioner has shown that harm or threat of harm from political sources has been directed against him or her specifically, we have held that deportation must be withheld. For example, in *Turcios*, the petitioner testified that he was arrested by the National Police while talking with a university professor in a park. The professor was known for his leftist activities. The petitioner testified that he was jailed, accused of involvement in guerrilla politics, beaten, and tortured. Turcios was forced to sign a blank confession, and was held in confinement for a month. 821 F.2d at 1399. We there held that the petitioner had established a clear probability of persecution. In *Bolanos–Hernandez v. INS*, 767 F.2d 1277 (9th Cir.1984), the petitioner testified that when he refused to join the guerrillas, they

threatened to kill him if he did not join their forces. In *Argueta v. INS*, 759 F.2d 1395 (9th Cir.1985), the petitioner testified that direct threats were made against him by a death squad, which accused him of belonging to a guerrilla organization. The next day, those same persons tortured and killed the petitioner's brother-in-law.

■ In this case, the petitioner has encountered problems from both the political left and political right. He has presented corroborated testimony that twenty guerrillas armed with M–16's went to his home looking for him, and that his cousin of the same approximate age, who was present at the time, was not recruited or otherwise harassed. The petitioner has also presented corroborated evidence that he was chased by a right-wing death squad brandishing 45's.

Vilorio–Lopez contends that the Immigration Judge's credibility finding was not supported by substantial evidence, and hence the ultimate finding that the petitioner was not a "refugee" within the meaning of 8 U.S.C. § 1158(a) is unsupported by the record also. He further contends that if we accept his testimony as credible in all material respects, as he contends we must, then he has met the higher standard necessary to establish a clear probability of persecution, and is entitled to a judgment reversing the denial of withholding of deportation as well. *See Turcios*, 821 F.2d at 1400. For its part, the Government does not seriously dispute the petitioner's logic, if the testimony is accepted as credible. We agree with both sides that if the credibility findings are not supported, the petitioner has met his burden qualifying for withholding of deportation.

■ The case thus turns upon the credibility findings of the Immigration Judge. This court reviews credibility findings for substantial evidence. *Turcios*, 821 F.2d at 1399; *Saballo–Cortez v. INS*, 761 F.2d 1259, 1262 (9th Cir.1984). Although an IJ's credibility findings are granted substantial deference by reviewing courts, *Sarvia–Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir.1985), an IJ who rejects testimony for lack of credibility must offer a "specific, cogent reason" for the rejection.

*Turcios*, 821 F.2d at 1399; *Damaize–Job v. INS*, 787 F.2d 1332, 1338 (9th Cir.1986). When the Immigration Judge provides specific reasons for questioning a witness's credibility, this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible. ● *Damaize–Job*, 787 F.2d at 1337–38.

Vilorio–Lopez and Reyes–Flores testified that they were chased through the streets of San Salvador by a right-wing death squad. The IJ rejected their testimony regarding the incident stating, "these stories are so conflicting that I cannot find that either version is particularly credible." As we have seen, the record reveals that Vilorio–Lopez's and Reyes–Flores' testimony regarding the death squad incident conflicts as to the year of the incident, the length of time the men were sheltered from the death squad, and whether payment was made for their accommodation. In all other respects, the two men testified consistently.

■ Minor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding. *Damaize–Job*, 787 F.2d at 1337–38.

[M]inor discrepancies in dates that are attributable to the applicant's language problems ... and cannot be viewed as attempts by the applicant to enhance his claims of persecution have no bearing on credibility.... The IJ nowhere explained how these inaccuracies reflected on the credibility of his persecution claims or for what possible reason Damaize would intentionally have provided incorrect information on such trivial points. These trivial errors merely provided an excuse upon which to predicate a finding of no credibility.

*Id.* at 1337.

■ In the absence of specific direction to other portions of the record, and when the stated reasons for an adverse credibility finding are inadequate, this court will not find that an adverse credibility finding is supported by substantial evidence. "Review of the record does not reveal evasive testimony deserving of a negative credibility finding. Without more specific direction and in the absence of obvious evasiveness, we are unable to say the IJ's adverse credibility finding is supported by substantial evidence." *Turcios*, 821 F.2d at 1400.

We conclude that the IJ's credibility finding is based on minor inconsistencies in the testimony of Vilorio–Lopez and Reyes–Flores about the death squad incident that were possibly the result of mistranslation or miscommunication, and are not material to Vilorio–Lopez's fear for his safety. Neither the IJ nor the Government points to any other inconsistent portion of Vilorio–Lopez's or Reyes–Flores' testimony to discount the credibility of the death squad testimony. The credibility of their testimony concerning the armed guerrillas' search for the petitioner was not challenged. Accordingly, the IJ's adverse credibility determination is not supported by substantial evidence.

It is not necessary to address the petitioner's due process claims. The order of the BIA is reversed. We remand the asylum claim so the Attorney General may exercise his discretion. *See Artiga–Turcios v. INS*, 829 F.2d 720, 724 (9th Cir.1987).

BRUNETTI, Circuit Judge, dissenting:

I respectfully dissent.

I do not dispute that withholding of deportation is not discretionary. If the alien meets the statutory test, 8 U.S.C. § 1253(h), the Attorney General cannot deport the alien. *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir.1987); *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1281 (9th Cir.1985).

However, the circumstances of petitioner's case come nowhere near those of the aliens in those two cases. Unlike the alien in *Turcios*, petitioner was *never* arrested—nor was he confined, beaten or tortured like Turcios was. Unlike the alien in *Bolanos–Hernandez*, petitioner was not threatened to be killed by the guerrillas if he refused to join their ranks. In fact, the one or two times (depending on what is believed in petitioner's testimony) that

guerrillas came to his parents' home to recruit him, petitioner was not even home. There was no confrontation between petitioner and guerrillas so there was no threat.

Petitioner has failed to establish that he has been, or will be, singled out for persecution. *Zepeda–Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984); *Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1453 (9th Cir.1985), *aff'd* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed. 2d 434 (1987). Petitioner simply cannot meet his burden of proving a well-founded fear of persecution.

I also dissent on the issue of the IJ's and BIA's credibility findings. I disagree with the majority's conclusion that the inconsistencies in petitioner's testimony are minor. The story concerning the death squad incident conflicts as to the year of the incident, the length of time the petitioner was sheltered from the death squad and whether payment was made for their accommodation. For example, petitioner testified he hid for one hour but his cousin Reyes–Flores, with whom he hid, testified they stayed the whole night and the next day. Furthermore, the discrepancy in years is a full two years—petitioner testified the incident happened three years ago and Reyes–Flores testified it happened last year. These are not minor inconsistencies.

There are other inconsistencies, not minor in nature, which support a finding of no or little credibility. These include: 1) petitioner's testimony that another cousin was shot in the leg while in the army, while Reyes–Flores testified that the same cousin was shot in the arm; 2) petitioner testified that he was in the army for a month, but Reyes–Flores testified that petitioner was in the army for only five days; and 3) despite his purported fear of the guerrillas and the death squad, petitioner waited a year to leave El Salvador after the incident.

None of these inconsistencies are minor, nor can they be attributed, as the petitioner and the majority suggest, to language barriers, mistranslation, miscommunication or cultural differences.

I would affirm the IJ's and the BIA's findings on petitioner's credibility.