**Kabul SINGH, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–71280.

Agency No. A75–301–894.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2003.

Decided Nov. 6, 2003.

Martin Resendez Guajardo, Law Office of Martin Resendez Guajardo, San Francisco, CA, for Petitioner.

Regional Counsel, Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Terri J. Scadron, DOJ–U.S. Department of Justice, Victor M. Lawrence, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before SCHROEDER, Chief Judge, O'SCANNLAIN, and TASHIMA, Circuit Judges.

MEMORANDUM *

Kabul Singh, a native and citizen of India, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing Singh's appeal from a decision of an Immigration Judge ("IJ") denying his applications for asylum and withholding of removal. Singh contends that the BIA and the IJ erred in finding that he had not met his burden of proof on either

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

* This disposition is not appropriate for publication and may not be cited to or by the courts

of this circuit except as provided by Ninth Cir. R. 36–3.

claim because he was not credible. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we grant the petition.

Adverse credibility determinations are reviewed under a substantial evidence standard. *See Al–Harbi v. INS,* 242 F.3d 882, 888 (9th Cir.2001). Although this standard is highly deferential, "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1142 (9th Cir.1988). In addition, "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shah v. INS,* 220 F.3d 1062, 1071 (9th Cir.2000).

Where, as here, the BIA relies on and adopts the reasoning of the IJ, we review the decision of the IJ, as if it were the decision of the BIA. *See Alaelua v. INS,* 45 F.3d 1379, 1381–82 (9th Cir.1995). After reviewing the record, we conclude that none of the reasons relied on by the IJ for disbelieving Singh constitutes substantial evidence. Because the parties are familiar with the factual and procedural history of this case, we recite the facts only to the extent necessary to explain our judgment.

The IJ found contradiction in the fact that Singh testified that he was "solely . . . engaged in farming, but later on indicated that at least four years of his adult life he was engaged in some sort of activity on a ship. . . ." Singh consistently maintained, however, that he was a farmer for all of his working life until fear of the Indian police drove him and his brother to leave their home. During this four-year period away from home, he worked for a marine shipping company. Given these circumstances, it was not contradictory for Singh to identify himself solely as a farmer.

Next, the IJ found contradiction in Singh's statements about why militants chose to raid his home. Singh's declaration stated that the militants told him that he need not fear the police, because his farmhouse was away from the village. At the hearing, Singh testified on cross-examination that he believed the militants chose his home because of its location. At that point, the government attorney said he was not interested in speculation and asked Singh whether the militants *specifically* told him why his house was chosen. To this narrow question, Singh responded "No." His testimony did not contradict his declaration, which dealt with the militants' reassurances of safety.

The IJ also found that Singh testified inconsistently about the identities of the militants who invaded his home. Singh testified that he knew the names and faces of the three militants who visited his home twice in June 1992. He also consistently testified that two of the same three militants visited again in October 1992, but he could not remember which two of them came back. In her findings of fact, the IJ states that Singh "could not explain how he would associate any particular name with a face." Singh explained, however, that although he could associate the names with the faces, he could not remember the faces of the two militants who returned in October. Singh's answers on whether he recognized the militants are less than clear, but his testimony was not contradictory.

The IJ also disbelieved Singh, because he testified that his legs were "stretched" when asked about the beatings he endured at the hands of the Indian police. The IJ felt that leg stretching was not a form of "beating," and that mentioning stretching in response to questions about beatings resulted in "convoluted" testimony. There was a difficult language barrier involved,

however, and Singh maintained in his declaration that he was both tortured and beaten.

The IJ also found Singh to be not credible because "he couldn't keep straight who was sarpanch when." Any confusion about the year in which one sarpanch succeeded another, however, does not go to the heart of Singh's claim for asylum. For example, this Court has held that confusion about the year in which a death squad incident took place is not an adequate basis for an adverse credibility finding. *See Vilorio–Lopez*, 852 F.2d at 1142. Likewise, a discrepancy about the location of a political rally is not enough to support an adverse credibility finding. *Singh v. Ashcroft*, 301 F.3d 1109, 1113 (9th Cir.2002). In short, "[i]f discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution,' they have 'no bearing on [his] credibility.'" *Id.* (quoting *Damaize–Job v. INS*, 787 F.2d 1332, 1337 (9th Cir.1986)). Here, the contradictions in Singh's testimony concern the political titles of the persons who accompanied him to the police station, not their identities. The contradictions are therefore trivial errors not material to Singh's claim.

The IJ also found contradiction in the fact that Singh's declaration stated that he "took the village sarpanch" with him when he confronted the police about his brother's disappearance, whereas in his testimony he stated that the sarpanch along with the rest of the panchayat joined him. Singh explained, however, that while the entire panchayat accompanied him to the station, "it is a sarpanch only who talks." Moreover, the sarpanch is also a member of the panchayat. Thus, there is no contradiction in asserting on one occasion that the sarpanch accompanied him and on another that the panchayat was there.

The IJ found it hard to believe that the police would not have detained Singh in August 1996, when he visited the police station. Singh explained that the police did not mistreat him because he was accompanied by the village panchayat. In her findings, the IJ stated that she did not find Singh's explanation persuasive: "If the police really though [Singh and his brother] were involved in wrongdoing, particularly a murder, his being accompanied by the sarpanch would not seem to make much of a difference to this Court." We have held that "[s]peculation and conjecture cannot form the basis of an adverse credibility finding. . . ." *Shah*, 220 F.3d at 1071; *see also Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996). Here, the IJ's conclusions are based on personal conjecture regarding how Indian police officers would behave in the presence of village elders, not on substantial evidence.

The IJ also stated that she could not establish Singh's identity, ethnicity, or country of origin. Singh produced two identification documents: his government-issued learner's permit and a "not found certificate." Although the learner's permit was a government-issued photo identification, the IJ did not think it likely that a 28–year–old man would have a learner's permit. This is an unreasonable assumption about India and its practices and culture when confronted with an original, government-issued document. The IJ also questioned why Singh did not have a passport or a matriculation certificate, but Singh readily explained why he could not provide these documents. Moreover, Singh was forthright about the alias he used on a passport to enter the United States.

Finally, the IJ noted that Singh could have obtained more detailed and helpful affidavits. This Court has noted, however, that "[s]upplying corroborating affidavits . . . has never been required to establish an applicant's credibility." *Lopez–Reyes*,

79 F.3d at 912. The only exception is when corroborating evidence is "easily available" and the petitioner " 'provides no credible explanation' " for his failure to produce it. *Chebchoub v. INS,* 257 F.3d 1038, 1044 (9th Cir.2001) (quoting *Sidhu v. INS,* 220 F.3d 1085, 1092 (9th Cir.2000)). Here, unlike in *Chebchoub,* Singh did provide corroborating affidavits. The IJ questioned the authenticity of an affidavit from Singh's mother because correction fluid was used to correct misspellings of his name. Yet the affidavit was prepared by a typist in India, and despite Singh's testimony to the contrary, the IJ assumed that Singh's mother could not read English well enough to have identified misspellings in his name.

In sum, we find that the IJ did not articulate a legitimate basis to question Singh's credibility. The contradictions that the IJ identified in Singh's testimony were either nonexistent or trivial, and the stated grounds for disbelief were based on speculation and conjecture. For these reasons, we grant the petition for review and remand the case to the BIA to determine Singh's statutory eligibility for asylum. *See INS v. Ventura,* 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

**PETITION FOR REVIEW GRANTED.**

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.