Knarik HAKOBYAN; Davit Orujyan; Syuzanna Orujyan; Arshak Orujyan, Petitioners,

v.

John ASHCROFT; Attorney General, Respondent.

No. 02–73248.
Agency Nos. A75–679–743, A75–679–744, A75–679–745, A75–679–746.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2003.

Decided Jan. 27, 2004.

---

Knarik Hakobyan, Davit Orujyan, Syuzanna Orujyan, Asbet A. Issakhanian, Arshak Orujyan, Glendale, CA, for Petitioners.

Regional Counsel, Immigration & Naturalization Service, Laguna Niguel, CA, Los Angeles District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Jeffrey J. Bernstein, Stephen J. Flynn, Arthur L. Rabin, DOJ–U.S. Department of Justice, Washington, DC, for Respondent.

Before PREGERSON, COWEN,* and W. FLETCHER, Circuit Judges.

## MEMORANDUM**

Knarik Hakobyan, a native of Iran and citizen of Armenia, petitions for a review of the decision of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of deportation, and relief under Article 3 of the Convention Against Torture ("CAT"), pursuant to 8 U.S.C. §§ 1158(a), 1231(b)(3), and 8 C.F.R. § 208.16.[1] Hakobyan contends that the Immigration Judge ("IJ") erred in finding that the testimony of Hakobyan and her husband, Arshak Orujyan, was not credible, and in finding that Hakobyan had not met her burden of proof that she and her family were eligible for asylum, withholding of removal, or relief under the CAT. We grant the petition for review.

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Hakobyan's husband and two minor children are also petitioners in this action, but all of their claims are derivative of Hakobyan's claims. Hakobyan's husband, Arsak Orujyan, is a native of Iran and citizen of Armenia; her daughter, Suzyanna Orujyan is a native and citizen of Armenia; and her son, Davit Orujyan, is a native of Russia and citizen of Armenia.

When the BIA affirms an IJ's decision without opinion under 8 C.F.R. § 1003.1(a)(7), we review the IJ's decision directly. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 850 (9th Cir.2003). We review questions of law de novo. *Melkonian v. Ashcroft*, 320 F.3d 1061, 1065 (9th Cir. 2003). We review credibility determinations under the deferential substantial evidence standard. *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir.2002).

The IJ found that Hakobyan was statutorily ineligible for asylum, because her family had moved from Iran to Armenia and been given Armenian citizenship. Under the act, aliens who have been firmly resettled are not eligible for asylum. 8 U.S.C. § 1158(b)(2)(A)(vi). In this case, Hakobyan would be ineligible for asylum due to persecution in Iran, because she and her family had been firmly resettled in Armenia. The Act, however, does not prevent her from being eligible for asylum due to persecution in Armenia.

The IJ then found that Hakobyan was not eligible for asylum because "the alleged harm that the respondents claim is not based upon any of the enumerated grounds under the Immigration Act." He reasoned that Hakobyan feared persecution because she had refused to kill her patient, not because of any political beliefs that she held. In addition, the IJ held that any persecution was the result of the actions of private individuals, not the government. Finally, he found that Hakobyan had not met her burden of establishing that the persecution was country-wide, because she and her family had moved in with her mother after the incident in the parking lot, and no further harm had come to them.

In order to establish eligibility for asylum, an alien must show that she qualifies as a refugee. A refugee is a person who is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The fear of persecution must be subjectively genuine and objectively reasonable. *Melkonian*, 320 F.3d at 1064–65; *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir.2001). To show that a fear is subjectively genuine, the petitioner must present credible testimony that she fears persecution by her government or by some group that the government is unwilling or unable to control. *Melkonian*, 320 F.3d at 1065. To show that a fear is objectively reasonable, the petitioner must present credible, direct, and specific evidence that supports a reasonable fear of persecution. *Id.*

Hakobyan testified that in April 1999 she had treated a patient named Edward Hovhannisyan. She testified that Hovhannisyan was a member of an opposition political party who had been shot in the chest. Hakobyan also presented hospital records showing that she had treated Hovhannisyan for a gunshot wound between April and May of 1999. She further testified that Hovhannisyan had told her he was shot by agents of the government because of his involvement with the political party. Soon after she started treating Hovhannisyan, she was visited by a man who offered her a bribe to kill Hovhannisyan. When she refused, the man threatened her. On May 16, Hakobyan was shot at when she arrived at work. The bullet did not hit her, striking the bumper or trunk of her car instead. After the shooting, Hakobyan and her family went to her mother's house outside the city, where they remained until they came to America in early August. Hakobyan also testified that Hovhannisyan was killed after his release from the hospital, and that a relative

had written to her stating that people were looking for her and that she would not be safe if she returned to Armenia.

■ Although Hakobyan testified that she was not a member of any political party, she was singled out for persecution because she refused to kill a member of an opposition party. Her refusal could have been seen by the government as subversive and political, and is sufficient to establish a well-founded fear of persecution on the basis of an imputed political belief. *Desir v. Ilchert*, 840 F.2d 723, 727–29 (9th Cir.1988) (persecution based on petitioner's refusal to affiliate himself with a particular group by paying bribe was based on imputed political opinion). Although Hakobyan presented no corroborating evidence that the man who offered her a bribe was a member of the government, there was also no contrary evidence offered. Hakobyan's testimony, if credible, is sufficient to establish that fact. *Ladha v. INS*, 215 F.3d 889, 901 (9th Cir.2000). Finally, although Hakobyan and her family did live with her mother for three months without further incident, she never returned to work, and Hakobyan testified that they were in hiding at her mother's house. Without more, this testimony does not establish that she could live safely in Armenia without further persecution.

■ The IJ determined that the testimony of both Hakobyan and Orujyan was not credible. Despite the deference afforded a credibility determination, "an IJ who rejects testimony for lack of credibility must offer a 'specific, cogent reason' for the rejection." *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir.1988) (citations omitted). "When the Immigration Judge provides specific reasons for questioning a witness's credibility, this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credi-

ble." *Id.* at 1142. Minor inconsistencies in the petitioner's testimony will not support an adverse credibility determination. *Singh*, 301 F.3d at 1112. "Inconsistencies in the petitioner's statements must go to 'the heart of [his] asylum claim' to justify an adverse credibility finding." *Id.* at 1111–12 (citations omitted).

Although the IJ cited several inconsistencies in the testimony, they are not sufficient to support the adverse credibility determination. Whether Hakobyan's in-laws or cousins are currently living in the family's house in Armenia is entirely irrelevant to the asylum claim. Whether the man who offered Hakobyan a bribe said that he would kill her because of her refusal or merely said that things would go badly for her because of her refusal is relevant to the claim, but is not necessarily inconsistent. A veiled threat followed by an actual attempt on one's life is not very different from an explicit threat followed by an attempt on one's life. Likewise, where exactly the bullet hit the rear of the car does not go to the heart of the asylum claim; whether the bullet hit the bumper or grazed the trunk is a minor inconsistency.

The IJ also pointed out inconsistencies between Hakobyan's testimony and her asylum application. The exact date that the family decided the situation was too dangerous and that they would leave Armenia does not go to the heart of the asylum claim. Additionally, although the initial asylum application does not mention the man's reaction to Hakobyan's refusal to kill her patient, it does state that she was afraid because of her refusal. Her later testimony explains this fear, but does not contradict anything in the application.

The remaining reasons for the adverse credibility determination are based not on any inconsistencies in the testimony, but on the IJ's own personal supposition. For

example, he found it incredible that Orujyan, who had held a high position in the city government, would not have informed the police of the attempt to bribe his wife, and that Hakobyan would not have informed her patient about the attempt to bribe her. "Speculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir.2000).

Because the IJ's credibility determination is not supported by substantial evidence, and because, if credited, Hakobyan's testimony establishes persecution based on a protected ground, we remand for further proceedings.

**PETITION GRANTED.**