**Edgar E. CASTILLO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 90–70605.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 8, 1991.*

Decided Dec. 20, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

William A. Gardner, San Francisco, Cal., for petitioner.

Ellen Sue Shapiro, Office of Immigration Litigation Civil Div., Washington, D.C., for respondent.

Before CHOY, NORRIS and KLEINFELD, Circuit Judges.

CHOY, Circuit Judge:

Edgar E. Castillo appeals from a final order of the Board of Immigration Appeals ("the Board" or "BIA") issued on October 15, 1990 denying his requests for asylum. Castillo contends that there is not substantial evidence to support the BIA's determination that he was not eligible for asylum. This court has jurisdiction to hear this matter under section 106 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1105a. Because the BIA set forth specific reasons, supported by substantial evidence, why Castillo did not demonstrate a well-founded fear of persecution, and because the Board made it clear this was an alternative basis for denial that was totally

independent of its taking administrative notice of the change of government in Nicaragua, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Edgar E. Castillo is a thirty-five-year-old man who left Nicaragua on December 13, 1985 and traveled to the United States. He was apprehended and charged with entering the United States without inspection in violation of section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2), by an order to show cause issued on December 20, 1985. During his deportation and asylum hearings Castillo was represented by counsel and the hearings all took place with a translator present.

At his asylum hearing Castillo testified that before 1979 he was a member of the Somoza party for fifteen years, that during the voting census and elections he was a poll taker, and at other times helped the party by distributing propaganda or providing assistance to participants at demonstrations, which took place approximately every three months. Castillo also stated, however, that he did not participate in any anti-Sandinista activities from 1981 to 1984.

Castillo testified that after the revolution in 1980 he was interrogated four times at work by the Sandinista state security police for one to two hours each time. Regarding these interrogations, Castillo stated that "They didn't prove anything against me" and that during the questioning he was not physically threatened. After these interrogations Castillo was not questioned again, even though he remained in Nicargua for another five years.

Castillo stated that he feared returning to Nicaragua because he did not have work. He stated that his profession in Nicaragua was banking and finance but that he was not employed in that profession when he left Nicaragua and never actually had worked in either of those fields. He testified that he was sure he could not work in his profession because he belonged to the Somoza party. Castillo graduated from school in December 1982 and thereafter worked first as a file clerk for one year and then in a position with the same company sending "work norms" until the time he fled to the United States.

Castillo also testified that he feared returning to Nicaragua because he does not want to serve in the military and that he left Nicaragua because he was registered for the military and the government told him he had to serve. According to Castillo, military service is "absurd, it's something absurd." He also stated that in Nicaragua everyone under forty years of age is required to serve in the military. Castillo testified that he is reluctant to serve in the Nicaraguan military because he was raised Baptist although he also stated that if he had to serve in the United States military he would do so.

The Immigration Judge (IJ) denied Castillo's application for asylum and withholding of deportation. The judge noted that shortly after the 1979 revolution Castillo was interrogated four times by the Sandinista state security police. He added that each time Castillo was questioned for one to two hours but that during the interrogations there were neither threats of physical harm nor was Castillo mistreated, detained, convicted of any crimes, or imprisoned.

With regard to Castillo's participation in political organizations, the IJ noted that from 1979 to the time he left Nicaragua in December 1985 Castillo was not a member of any political party. Moreover, he had not participated in any anti-Sandinista activity from 1981 to 1984. The IJ stated that Castillo never has served in the military although he is registered for the armed forces, fears he may be called to serve, and does not wish to serve.

Finally, the IJ noted that, although Castillo testified that he is an Evangelican associated with the Baptist Church, his asylum application indicates that he is Catholic. The judge also stated that Castillo testified that he never had been persecuted in Nicaragua based on his religion.

The IJ concluded that, even assuming Castillo's affiliation with the National Liberal Party of Somoza, there was no evidence that the Sandinistas persecuted him

as a result of that affiliation or that a reasonable person in his circumstances would fear persecution in the future. Moreover, the IJ found that Castillo left Nicaragua to avoid military service because he either does not agree with the Sandinista government or simply dislikes military service and that neither of these reasons establishes a well-founded fear of persecution.

Castillo appealed the IJ's decision to the BIA. The BIA also concluded that Castillo had not established a reasonable possibility that he would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if he were returned to Nicaragua. In this regard, and key to our decision on appeal, the Board not only *explicitly stated* that this finding was based on "two distinct grounds, each of which is an independent basis for denial" but also *cited specific reasons why* Castillo had not established a well-founded fear of persecution.

First, the BIA noted that Castillo had not proven a well-founded fear of persecution because, although he was interrogated four times in 1980 for one to two hours, after the questioning he remained in Nicaragua approximately five and one-half years before he voluntarily left for the United States. Moreover, the Board's opinion also noted that Castillo made no allegation that he was otherwise restricted, harmed, or even questioned by the Sandinistas. The second independent ground the BIA cited involved its taking administrative notice of the change in government in Nicaragua which prompted the Board to conclude that, since Sandinista party no longer governs Nicaragua, Castillo's claim of well-founded fear of persecution by that government is unsupported.

Finally, the Board added that, assuming Castillo had established past persecution,

this was not a case where the BIA might grant asylum based solely on past persecution absent a showing of a reasonable likelihood of present persecution. In *Matter of Chen*, Interim Decision 3104 (BIA 1989), the BIA held that there may be selected cases where it should exercise its discretion to grant asylum for humanitarian reasons even if there is little likelihood of future persecution. In Castillo's case the BIA noted that such an instance may occur when past persecution had been so severe that return to the country of persecution would be inhumane. The BIA concluded, however, that the record of Castillo's case presented no humanitarian or compelling bases under this principle.

## STANDARDS OF REVIEW

■ We review the factual findings underlying the BIA's denial of asylum under the substantial evidence test. *Canas–Segovia v. INS*, 902 F.2d 717, 721 (9th Cir. 1990), *petition for cert. filed*, (U.S. Feb. 6, 1991) (No. 90–1246); *Beltran–Zavala v. INS*, 912 F.2d 1027, 1029 (9th Cir.1990). This standard requires us to uphold the BIA's decision if it was substantially reasonable based on all the evidence. *Diaz–Escobar v. INS*, 782 F.2d 1488, 1493 (9th Cir.1986). Moreover, the court may not reverse the BIA simply because it disagrees with its evaluation of the facts. *Id.* at 1493.

## I. REVIEW OF THE BIA OPINION

■ This court's review is limited to the BIA's decision and thus we may not rely on the IJ's opinion in deciding the merits of Castillo's case. *Elnager v. US INS*, 930 F.2d 784, 787 (9th Cir.1991); *Cardoza–Fonseca v. US INS*, 767 F.2d 1448, 1455 (9th Cir.1985), *aff'd*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).[1] The BIA has the power to conduct a *de novo* review of

---

**1.** The IJ's credibility findings, however, are accorded substantial deference. *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir.1990); *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir.1988). Although these findings are granted substantial deference an IJ who rejects testimony for lack of credibility must offer a "specific, cogent reason" for the rejection. *Turcios v. INS*, 821 F.2d

1396, 1399 (9th Cir.1987); *see also De Valle*, 901 F.2d at 792; *Vilorio–Lopez*, 852 F.2d at 1141. Of course the Board, while conducting its independent *de novo* review, may in appropriate circumstances reject the IJ's credibility findings. *McMullen v. INS*, 658 F.2d 1312, 1318 (9th Cir. 1981).

the record, to make its own findings, and to determine independently the sufficiency of the evidence, *Elnager,* 930 F.2d at 787; *Cardoza–Fonseca,* 767 F.2d at 1455, and for us to review the IJ's decision under our deferential substantial evidence test essentially would deprive the petitioner of the BIA's *de novo* review of his case.

■ Furthermore, in order for this court to conduct a proper substantial evidence review of the BIA's decision, the Board's opinion must state with sufficient particularity and clarity the reasons for denial of asylum. *See Contreras–Buenfil v. INS,* 712 F.2d 401, 403 (9th Cir.1983); *Mejia–Carrillo v. INS,* 656 F.2d 520, 522 (9th Cir.1981). Boilerplate opinions, which set out general legal standards yet are devoid of statements that evidence an individualized review of the petitioner's contentions and circumstances, neither afford the petitioner the BIA review to which he or she is entitled, nor do they provide an adequate basis for this court to conduct its review. Those Board opinions that lack an adequate statement of the BIA's reasons for denying the petitioner relief must be remanded to the Board for clarification of the bases for its opinion. *Cardoza–Fonseca,* 767 F.2d at 1455.

There are no steadfast rules regarding what constitutes an adequate Board decision. The BIA's opinion in this case offers one example of an adequate opinion. It provides in pertinent part:

> First, the respondent has failed to show a well-founded fear of persecution because he was questioned 4 times in 1980 for approximately 1 to 2 hours. After this questioning, the respondent remained in Nicaragua for approximately 5 and one-half years, until he voluntarily departed for the United States. He has made no allegation that he was otherwise restricted, harmed, or even questioned by the Sandinista authorities. On this record, the respondent has failed to show a well-founded fear of persecution in order to qualify for asylum.

The BIA's enumeration of the specific grounds for its decision enables us to conduct our review.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE BIA'S DECISION

■ An alien seeking asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), must demonstrate that he is a refugee within the meaning of section 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A), which defines a refugee as a person who is unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The burden of proving refugee status is on the petitioner. 8 C.F.R. § 242.17(c). Moreover, even if the petitioner establishes that he is a refugee under this section the Attorney General has discretion whether to deny refugees asylum. *Cardoza–Fonseca,* 480 U.S. at 428 n. 5, 107 S.Ct. at 1211 n. 5. In Castillo's case, the IJ and BIA determined that he was not a refugee and did not reach the question of the Attorney General's discretion.

■ The determination that an alien has a well-founded fear of persecution has both an objective and subjective component. *Cardoza–Fonseca,* 767 F.2d at 1453; *De Valle,* 901 F.2d at 790. The subjective component requires a showing that the alien's fear is genuine. *Beltran–Zavala,* 912 F.2d at 1030; *Diaz–Escobar,* 782 F.2d at 1492. The objective component "requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that petitioner faces persecution," *id.,* and need only show that there is a "reasonable possibility" of persecution, not that persecution will probably result should he return to his homeland. *Cardoza–Fonseca,* 480 U.S. at 440, 107 S.Ct. at 1217; *Beltran–Zavala,* 912 F.2d at 1030. The objective standard may be satisfied with the applicant's testimony alone if documentary evidence is unavailable. *Cardoza–Fonseca,* 767 F.2d at 1453.

The BIA relied on two bases to support its conclusion that Castillo had not proven a well-founded fear of persecution: (1) that Castillo was questioned four times in 1980

for one to two hours and that after the questioning he remained in Nicaragua for five and one-half years until he voluntarily left for the United States; and, (2) that Castillo had not presented evidence that he was otherwise restricted, harmed, or even questioned by the Sandinista authorities.

When determining the objective reasonableness of an alien's claim of well-founded fear of persecution the BIA may properly consider as significant a petitioner's continued safe and undisturbed residence in his homeland after the occurrence of the event which is alleged to have induced his fear. *See, e.g., Rodriguez–Rivera v. United States Dept. of Imm. & Naturalization,* 848 F.2d 998, 1006 (9th Cir.1988) (two-month undisturbed residence after death threat coupled with fact that feared individuals were not still interested in petitioner is a significant factor undermining petitioner's well-founded fear); *see also Novoa–Umania v. INS,* 896 F.2d 1, 5 (1st Cir.1990) (petitioner's peaceful residence for over six months in El Salvador provides substantial evidence). *But see Damaize–Job v. INS,* 787 F.2d 1332, 1336 (9th Cir.1986) (petitioner remaining in Nicaragua for two years coupled with the ability to obtain a passport did not constitute substantial evidence that he had no well-founded fear of persecution when he stayed only because uncle and sister had been arrested, needed his help, and he testified he feared for his life).

Under these decisions there is substantial evidence to support the BIA's determination that Castillo failed to meet the objective prong of the well-founded fear test. Castillo remained in Nicaragua for five years after the 1980 interrogations and never again was questioned or even contacted, let alone harmed by the Sandinistas.

We also conclude that the other reasons Castillo offers for why he fears returning to Nicaragua are not objectively reasonable grounds for fear of persecution. Castillo's testimony that he does not want to serve in the Nicaraguan military because he believes that the ·military is "absurd" does not demonstrate well-founded fear of persecution based on one of the enumerated grounds. Section 101(a)(42)(A) requires an alien's well-founded fear of persecution be "on account of race, religion, nationality, membership in a particular social group, or political opinion." Castillo's desire to avoid military service is not based on one of the enumerated grounds but rather is rooted in his feeling that the Nicaraguan military is "absurd." An alien's refusal to perform military service merely because he views military service is absurd is not an acceptable ground for refugee status under this section. *Canas–Segovia v. INS,* 902 F.2d 717, 725 n. 15 (9th Cir.1990), *petition for cert. filed,* (U.S. Feb. 6, 1991) (No. 90–1246). Castillo's assertion that military service is absurd cannot support an objective well-founded fear of persecution.

In his testimony Castillo also states that everyone under forty must serve in the Nicaraguan military and that he is registered to do so. Even if the court reads Castillo's claim of persecution as based on his objection to Nicaragua's military conscription system Castillo still fails to establish a well-founded fear of persecution. The fact that a nation forces a citizen to serve in the armed forces along with the rest of the country's population does not amount to persecution. *Kaveh–Haghigy v. INS,* 783 F.2d 1321, 1323 (9th Cir.1986).

Finally, refusal to perform military service on account of genuine reasons of conscience, including genuine religious convictions, may be a basis for refugee status. *Canas–Segovia,* 902 F.2d at 725. The record in Castillo's case, however, does not support a finding that he is a conscientious objector whose desire to avoid military service is based on genuine religious convictions. This conclusion is based on three observations. First, Castillo's testimony calls into question the genuineness of his religious conviction in that he testified he was raised a Baptist in the Evangelican Church yet his asylum application notes that he is Catholic. Second, Castillo testified that if he had to serve in the United States military he would do so. The fact that his religion would not prohibit him from serving in *all* military organizations

tends to raise a question as to whether his objection to Nicaraguan military service was based on genuine religious beliefs. Lastly, the fact that Castillo did not include religious persecution in his asylum application as a reason for his well-founded fear of persecution also supports a determination that genuine religious beliefs are not the reason Castillo wishes to avoid service in the Nicaraguan military.

 Castillo also contends he has been persecuted and fears returning to Nicaragua because he is unable to find work in his chosen profession. Although Castillo testified that he is certain this failure is attributable to the fact that he was a Somoza party member, he offered no evidence linking his failure to obtain a banking or finance position with the government's persecuting him for his political views. His testimony merely indicates that he graduated from school in December 1982, worked for a year as a file clerk and then in a position sending work norms until he departed for the United States.

We find that substantial evidence supports the BIA's determination that Castillo is not entitled to asylum.

## III. ADMINISTRATIVE NOTICE

The second independent ground the BIA cited for not finding a well-founded fear of persecution involved its taking administrative notice of the change in government in Nicaragua. On the basis of the noticed facts that the Sandinista party no longer governs Nicaragua the Board concluded that Castillo's fear of future persecution by the Sandinistas was not well-founded.

We need not address the propriety of the BIA taking such administrative notice because substantial evidence supports the BIA's independent determination that Castillo did not satisfy the criteria for asylum even if administrative notice was taken improperly.

AFFIRMED.