26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alemayehu HABTE, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70472.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1994.*
Decided May 19, 1994.
 
 Before: BROWNING, PREGERSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I. OVERVIEW
 
 2
 Alemayehu Habte petitions pro se for review of the Board of Immigration Appeals's decision denying his applications for political asylum and withholding of deportation. We have jurisdiction under 8 U.S.C. Sec. 1105(a)(1). We find that Mr. Habte has failed to demonstrate persecution or a well-founded fear of persecution on account of his political beliefs, and we therefore deny the petition for review.
 
 II. BACKGROUND
 
 3
 Mr. Habte, a citizen and native of Ethiopia, left his homeland in 1983 on a government sponsored scholarship for advanced study in Yugoslavia. He was one of just a few students who received official permission from the Ethiopian government to study abroad.
 
 
 4
 In July of 1985 he left Yugoslavia and entered the United States with a 6-month visitor's visa, intending to remain here as a student. In January of 1986 he applied for a student visa. Habte's student visa application included a three-page affidavit explaining his reasons for coming to the United States. No political reasons were mentioned. Eventually, his application for a student visa was denied because he was not able to prove financial support while in the United States. He nevertheless remained in the United States in an undocumented status until he applied for political asylum sometime in 1989.[1] In March of 1990, having, apparently, alerted the INS to his whereabouts and legal status via his asylum application, Mr. Habte was served with an Order to Show Cause why he should not be deported. He renewed his asylum application in October of that year.
 
 
 5
 He attached a letter to his asylum application explaining the reasons for his application. As he explained in his letter:
 
 
 6
 I grew up watching people getting killed on the streets everyday. I was forced to participate in a Communist Youth meeting every week. I never had or was given the chance to express my personal views and opinion, political or otherwise. It just didn't seem to matter to the Kebele people and the communist government. No matter what, the Kebele's meeting and propaganda always came first. I was never allowed to pursue my dreams and live my life right. What is right for the ruthless military government is to follow in their footsteps. They make your rights and wrongs their way. They never failed to show me what might happen to me if I dare challenge them.
 
 
 7
 A.R. at 119. His application also detailed the arrest and persecution of his uncle who was active in political affairs in Ethiopia.
 
 
 8
 Habte contended in his asylum application that he was considered a traitor in Ethiopia for leaving his subsidized studies in Yugoslavia and coming to the United States. He summed up his claim by stating that if he returned to Ethiopia he would "automatically be found guilty of being a 'counter-revolutionary', the penalty for which is long-term imprisonment with the probability of death. I am a defector from a communist/marxist country, and I would be treated accordingly." A.R. at 114.
 
 
 9
 In January of 1991, after a short hearing, the Immigration Judge ("IJ") denied Habte's applications for political asylum and withholding of deportation. Mr. Habte appealed to the Board of Immigration Appeals ("Board" or "BIA"), and his appeal was denied.
 
 III. DISCUSSION:
 
 10
 The Attorney General has discretion to grant asylum to any applicant who meets the threshold definition of a "refugee." 8 U.S.C. Secs. 1101(a)(42), 1157-59, 1253(h), 1521-24. "Refugee" is statutorily defined as "any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 11
 An application for asylum in exclusion or deportation proceedings is automatically also considered as a request for withholding of deportation. 8 CFR Sec. 208.3(b). Whereas a grant of asylum is discretionary, withholding of deportation is mandatory for qualified individuals. 8 U.S.C. Sec. 1253(h). Those who qualify are individuals whose "life or freedom would be threatened in [their country of origin] ... on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. The Supreme Court has held that this requires the applicant to demonstrate that it is "more likely than not" that the applicant would be subject to persecution in the applicant's home country. INS v. Stevic, 467 U.S. 407, 429-430 (1984).
 
 IV. STANDARD OF REVIEW
 
 12
 We review de novo the legal determinations regarding the requirements of the Immigration and Nationality Act (the "Act"). Abedini v. INS, 971 F.2d 188, 190-91 (9th Cir.1992). The BIA's factual findings regarding the asylum claim are "conclusive" if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. Sec. 1105a(a)(4). We reverse such factual findings only if the evidence presented by the petitioner was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992) (citations omitted).
 
 V. ANALYSIS
 
 13
 As discussed above, refugee status, and therefore eligibility for political asylum, depends on an applicant's ability to show (1) past persecution or a well-founded fear of persecution, (2) on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1101(a)(42)(A). Habte satisfies the first requirement because he has a well-founded fear of reprisals for his failure to complete his studies in Yugoslavia; but his application must fail because he has not shown that such reprisals would result from his political opinion.
 
 
 14
 A. Persecution or a Well-Founded Fear of Persecution
 
 
 15
 Persecution, as used in the act, is "the infliction of suffering or harm ... in a way regarded as offensive." Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969) (internal parenthesis omitted). An applicant may satisfy the requirement of persecution or a well-founded fear of persecution by demonstrating past persecution, or alternatively by showing a reasonable fear of future persecution. Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988). Habte's counsel admitted during his asylum hearing that Habte did not suffer past persecution. Therefore, to qualify for asylum Habte was required to show a well-founded fear of future persecution.
 
 
 16
 To show well-founded fear, the applicant must demonstrate both that his or her fear is subjectively genuine and that it is objectively reasonable. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The applicant's own credible testimony can satisfy the subjective requirement. Id. Habte testified that he was afraid to return to Ethiopia. Since the Board never specifically commented on whether it believed Habte's fear was genuine, we are bound to accept his testimony to that effect. Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986).
 
 
 17
 The objective component requires "credible, direct, and specific evidence" that supports a reasonable fear of persecution. Acewicz, 984 F.2d at 1061. Although general conditions in the country of origin can be relevant to this determination, Garcia-Ramos v. INS, 775 F.2d 1370, 1374 (9th Cir.1985), we generally require an asylum applicant to provide additional facts indicating some personal danger. Hernandez-Ortiz v. INS, 777 F.2d 509, 515-516 (9th Cir.1985). Habte attempts to establish this personal link in two ways.
 
 
 18
 First, he argues that he is in danger because his family has been targeted because of his uncle's political activities. The IJ and the Board found this unbelievable because Habte did not face persecution on this basis in the past, and because he did not show that others in the family have been persecuted on that basis. We find substantial evidence to support the Board's reasoning.
 
 
 19
 Second, Habte argues that he will be in danger because he is now considered a traitor because he reneged on his agreement to finish his studies in Yugoslavia and return to Ethiopia. The IJ stated that he did not believe that Habte would face any danger from the Ethiopian government for this reason, whereas the BIA appears to have assumed that Habte's fear was well-founded. We review the BIA's decision, not the IJ's. See Castillo v. INS, 951 F.2d 1117, 1120 (9th Cir.1991). We find that the reasonable inferences from Habte's testimony and from the other evidence in the record support Habte's contention that he faces the requisite danger in Ethiopia because he broke his agreement to study in Yugoslavia and then to return to Ethiopia.
 
 
 20
 B. Persecution "on account of" political opinion:
 
 
 21
 But such a finding does not end our inquiry. Even if Habte has a well-founded fear of persecution because he reneged on his agreement with the Ethiopian government, we must still determine whether such persecution is on account of his political opinion. The on account of requirement has two elements. First, Habte must show that he has a political opinion, or that the Ethiopian government will likely impute an opinion to him. See INS v. Elias-Zacarias, 112 S.Ct. 812, 816 (1992) (requiring petitioner to show he had a political motive for resisting military recruitment); Canas-Segovia v. INS, 970 F.2d 599, 601-02 (9th Cir.1992) (Elias-Zacarias did not foreclose the possibility of basing a claim of refugee status on an imputed political opinion).
 
 
 22
 Second, he must show that his persecutors are motivated to persecute him because of his opinion. Elias-Zacarias, 112 S.Ct. at 816 (" 'persecution on account of ... political opinion' in Sec. 101(a)(42) is persecution on account of the victim's political opinion, not the persecutor's," (emphasis in original)). More properly stated, he must demonstrate a nexus between his opinion and the persecution he fears.
 
 
 23
 As to the first requirement, the Board did not express any skepticism regarding the genuineness of Habte's political beliefs.[2] In the absence of negative credibility findings we are required to accept Habte's word. Damaize-Job, 787 F.2d at 1337-1338. Nevertheless, Habte's claim fails because he cannot satisfy the second requirement, that he demonstrate a nexus between his beliefs and the persecution he fears. As discussed above, the only well-founded fear Habte can demonstrate is that he will be punished for reneging on his agreement to study in Yugoslavia. But punishment for reneging on an agreement is not persecution for political beliefs. Habte must show that it was his beliefs that caused him to renege on the agreement. See Elias-Zacarias, 112 S.Ct. at 816 (requiring proof that the persecution is caused by the victim's political opinion). He cannot do so.
 
 
 24
 Both the Board and the IJ concluded that Habte did not prove that he left Yugoslavia for political reasons. Furthermore, their conclusions are supported by specific facts in the record. Habte himself stated that he came to the United States to be a student, and that for this reason he did not immediately apply for political asylum. Furthermore, Habte's student visa included a three-page explanation for his decision to come to the United States. At no point is the political situation in Ethiopia alluded to. Finally there is the delay between the time that Habte arrived and when he applied for asylum. This evidence render's reasonable the Board's opinion that Habte did not come to the United States because of his political views, and that therefore punishment for leaving Yugoslavia could not be because of his political views.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The 1989 asylum application is not included in the Administrative Record and it is mentioned only in Mr. Habte's brief before the BIA
 
 
 [2]
 The IJ did cast some aspersions on the genuineness of Habte's beliefs. For example, he evinced puzzlement as to "why, if [Habte] is so anti-government, he has waited so long before applying for asylum." A.R. at 42. However he did not explicitly state that he did not believe that Habte's beliefs were genuine