41 F.3d 1514
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Hipolita ULLOA-CHAVEZ, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70675.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided Nov. 10, 1994.
 
 Before: GOODWIN, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maria Hipolita Ulloa-Chavez petitions for review of the Board of Immigration Appeals' ("BIA") decision denying her application for asylum and withholding of deportation. We affirm.
 
 
 3
 * In order to be eligible for asylum as a "refugee" under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a), an alien bears the burden of proving either past persecution or a well-founded fear of future persecution "on account of ... political opinion." 8 U.S.C. Sec. 1101(a)(42)(A); Rodriguez-Rivera v. INS, 848 F.2d 998, 1001 (9th Cir.1988). To demonstrate past persecution, an alien must articulate specific, objective facts that support an inference of past persecution on account of one of the statutory grounds. Cardoza-Fonseca v. INS, 767 F.2d 1448, 1451-53 (9th Cir.1985), aff'd, 480 U.S. 421 (1987).
 
 
 4
 Chavez contends that the BIA, in reaching its decision that she had not demonstrated past persecution, erred in several of its findings.[1] Under the substantial evidence test, the BIA's factual findings must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole. 8 U.S.C. Sec. 1105(a)(4); Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Under the Supreme Court's recent explanation of this test, the BIA's decision can be reversed only if the evidence presented by Chavez was such that "a reasonable fact finder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992). Although Chavez presents a strong case of harassment by guerilla bands in 1980, her claims cannot meet this high standard of review.
 
 II
 
 5
 Chavez contends that several of the BIA's findings are not supported by substantial evidence. We address each in turn.
 
 
 6
 First, substantial evidence supports the BIA's finding that the guerillas did not hold Chavez hostage on account of her political opinion. Chavez contends that the guerillas imputed a hostile political opinion to her on account of her relationship to her father, whom they suspected of being an informer. The Supreme Court has stated that " 'persecution on account of ... political opinion' in section 1101(a)(42) is persecution on account of the victim's political opinion, not the persecutor's." Elias-Zacarias, 112 S.Ct. at 816. The Court made clear that a petitioner must therefore present some evidence, direct or circumstantial, that the persecutors' motive derived from the victim's political opinion, whether imputed or actual. See id.; Canas-Segovia v. INS, 970 F.2d 599, 601 (9th Cir.1992). Chavez herself stated that she overheard the guerillas state that their purpose was to prompt her father into returning. Thus, although the guerillas may have had a generalized political purpose in kidnapping her, Chavez has not shown that they were directly motivated by her political opinion in any way.
 
 
 7
 Chavez also contends that her refusal to be trained with arms caused the guerillas to impute a hostile political opinion to her. However, in Elias-Zacarias, the Court held that acts of conscription by a nongovernmental group do not necessarily constitute persecution "on account of" political opinion. See 112 S.Ct. at 815-16. As the Court observed, even someone who supports a cause may have valid reasons for resisting service. Indeed, Chavez told the guerillas her refusal was because she was too ill, not because she opposed them. Thus, the attempt to recruit Chavez, while certainly harrowing, does not constitute persecution on account of her political opinion.
 
 
 8
 Second, the BIA found that there was no evidence submitted by Chavez showing who killed her father, and that, even if the guerillas did kill him, it was not to persecute him but to neutralize "a direct threat to them." Both of these findings seem inappropriate. To fault Chavez for failing to produce evidence on exactly who killed her father when military investigators were unable to accomplish this task seems unfair. Moreover, Chavez did testify that she heard from guerillas that they had killed her father. The BIA's suggestion that if the guerillas did kill him it was not persecution but "neutralization" also seems inappropriate. Chavez's father was a shopkeeper, not a member of the military, the police or any other group that would be a "natural" target for the guerillas.
 
 
 9
 Nevertheless, tragic as the death of Chavez's father may have been, it is insufficient to support her application for asylum. Even if it is assumed that Chavez's father was persecuted solely on account of his political opinion, there is still substantial evidence to support the BIA's finding that such political opinion was never imputed to Chavez. The kidnapping of Chavez in 1980 was not on account of her political opinion. The apparent murder of her father took place approximately two years after this. Subsequent to this, there is no evidence that Chavez was ever singled out by guerillas in any way different from others in that area.[2]
 
 
 10
 Third, substantial evidence supports the BIA's finding that Chavez was not singled out for persecution on account of her political opinion from 1983 to 1988. During this period, Chavez stated that guerillas asked her (and others) for food and money and threatened reprisal if they refused. The mere existence of a generalized political motive underlying the guerillas' demands for food and money does not show that Chavez was persecuted on account of her own political opinion. See Elias-Zacarias, 112 S.Ct. at 816. Rather, such harms are the unfortunate result of the general violence that is bred by civil war and are insufficient to afford Chavez the relief she seeks. See Zepeda-Melendez v. INS, 741 F.2d 285, 289-90 (9th Cir.1984). In addition, this five-year period of relatively undisturbed residence in El Salvador after her father's death may validly be considered as mitigation of Chavez's fear of persecution. See Castillo v. INS, 951 F.2d 1117, 1122 (9th Cir.1991).
 
 
 11
 Fourth, the BIA affirmed the Immigration Judge's rejection on credibility grounds of Chavez's statement that she was threatened by the guerillas again in early 1988. Credibility findings of the BIA are also reviewed under the substantial evidence standard. Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987). In her written statement, Chavez asserted: "[A]t the beginning of [1988], the guerilla [sic] found about my whereabouts and threatened to kidnap and kill me if I did not leave the country." In her oral testimony, Chavez failed to mention this threat when asked by her counsel: "During the time from your father's disappearance to the time you left El Salvador, did you have any contact or communication with elements of the guerilla movement?" Chavez claims she did not mention it because she was not directly asked about it. The BIA found this explanation "completely incredible."
 
 
 12
 Though the BIA's assessment is overly harsh, it is essentially correct. This is not a case of clear inconsistency; rather, Chavez simply failed to repeat orally an incident--albeit a very important incident for her application--that she already mentioned in her written statement. The record also reveals Chavez's limited command of the English language and difficulty understanding the questions posed to her. Cf. Vilorio-Lopez v. INS, 852 F.2d 1137, 1139 (9th Cir.1988) (considering an alien's difficulty with English in assessing his credibility). However, it is not the reviewing court's place to substitute its own judgment of a petitioner's credibility for the judgment of the Immigration Judge or BIA. Estrada v. INS, 775 F.2d 1018, 1021 (9th Cir.1985).
 
 
 13
 Moreover, the greater problem with Chavez's written statement is that the evidence is not sufficiently specific.[3] Generally, "an alien's testimony alone will suffice to prove a well-founded fear, but only if it is credible, persuasive, and specific." Estrada-Posadas v. INS, 924 F.2d 916, 918-19 (9th Cir.1991) (quotation omitted). In this case, even setting aside the question of credibility, Chavez's evidence is still insufficiently specific. A single sentence in Chavez's written statement, without any detail or background, and without any elaboration in oral testimony, is simply not enough that "a reasonable fact finder would have to conclude that the requisite fear of persecution existed." Elias-Zacarias, 112 S.Ct. at 815.
 
 
 14
 PETITION DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Chavez also contends that substantial evidence does not support the BIA's determination that she is not eligible for withholding of deportation because she has not shown a "clear probability" that her life would be threatened under Sec. 243(h) of the INA, 8 U.S.C. Sec. 1253, on account of one of the statutory grounds. Because we hold that Chavez has not demonstrated past persecution, and because the "clear probability" standard is even more restrictive, see INS v. Stevic, 467 U.S. 407 (1984), Chavez cannot prevail on this claim
 
 
 [2]
 Chavez cites several cases in which individuals had political opinions imputed to them because of their family. In such cases, guerillas "falsely attribute[ ] an opinion to the victim, and then persecute[ ] the victim because of that mistaken belief about the victim's views." Canas-Segovia, 970 F.2d at 602 (emphasis added). Although Chavez may have shown that members of her family were persecuted for their political opinions, she has not shown that she was persecuted "because of" any belief, mistaken or otherwise, about her own political opinions
 
 
 [3]
 By contrast, in Vilorio-Lopez v. INS, 852 F.2d 1137 (9th Cir.1988), which Chavez cites, the court reversed the BIA's credibility finding because the petitioner's testimony was very detailed and specific