66 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jose Ramon DIAZ-MONTIEL, Luis Javier Diaz-Aguirre, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70922.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1995.*
Decided Sept. 13, 1995.
 
 1
 Before: HALL and LEAVY, Circuit Judges, and HOGAN,** Chief District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Jose Ramon Diaz-Aguirre and his son Luis Javier Diaz-Montiel, natives and citizens of Nicaragua, were originally ordered deported on October 19, 1989. They petition for review of the Board of Immigration Appeals' ("BIA") dismissal of their appeal from an immigration judge's ("IJ") decision finding them deportable as charged and denying their applications for asylum, 8 U.S.C. Sec. 1158(a), and withholding of deportation, 8 U.S.C. Sec. 1253(h). For the reasons that follow, the Diazes' Petition For Review is denied.
 
 
 4
 * The Diazes first argue that the BIA erred when it applied Acewicz v. INS, 984 F.2d 1056 (9th Cir.1993), instead of Castillo-Villagra, 972 F.2d 1017 (9th Cir.1992), to their case. Apparently, the Diazes view Castillo-Villagra as controlling because despite the change in government, the Sandinistas have continued their aggression against anti-Sandinista individuals. The Diazes assert they have suffered past persecution based on their political opinion. Specifically, Luis relies on the harassment that he received from other youths while riding the bus and the fear of future military service. His father, Jose, relies on the deaths of his wife's uncle and aunt; the confiscation of his sister's home in 1983; and the fact that the family's food ration card was held up for 15 days while being reissued.
 
 
 5
 Here, the IJ determined that the Diazes failed on their burden of proof for either asylum or withholding of deportation. He concluded that the Diazes failed to establish a well-founded fear of persecution based upon their experiences in Nicaragua. The Diazes were required to show that the persecution was "on account of" some statutorily enumerated status held by them or that they face a clear probability of harm if returned to Nicaragua. Elias-Zacarias, 112 S.Ct. at 816.
 
 
 6
 The IJ found the Diazes' fears were speculative. There was no connection shown between the deaths of Jose's wife's uncle and aunt and any persecution against the Diazes. Four or five years passed between those deaths and the Diazes' departure from Nicaragua, with no arrest, detention or interrogation of anyone in the immediate family. Further, it was clear that neither Luis or Jose had been involved in the counter revolutionary movement and no action was ever taken against either of them.
 
 
 7
 Similarly, the confiscation of Jose's sister's home occurred five years prior to the Diazes' departure. At all times, the Diazes owned their own home and, in fact, the home is still being used by a sister who is taking care of Jose's three minor children. Jose continues to communicate with his children on a monthly basis and they are doing fine.
 
 
 8
 The Diazes were issued passports, had no difficulties leaving the country, and there is no indication that the government has made any inquiries concerning their failure to return, their whereabouts, or any of their activities. Finally, there is no evidence that the 15 day delay of the Diazes' food ration card was anything but a bureaucratic mix-up.
 
 
 9
 The IJ was careful to state clear and specific reasons for his denial of asylum. See Castillo v. INS, 951 F.2d 1117, 1121 (9th Cir.1991). Under the circumstances enumerated by the IJ, we conclude that his decision to deny asylum was supported by reasonable, substantial, and probative evidence on the record considered as a whole.
 
 
 10
 Because the standard for withholding of deportation is higher than the standard for a grant of asylum, and the Diazes failed to meet the lower standard for a grant of asylum, we affirm the BIA's refusal to reopen and consider the Diazes' request for withholding of deportation.
 
 II
 
 11
 Again relying on Castillo-Villagra, the Diazes argue the BIA erred when it took adminitrative notice of the change in government in Nicaragua in 1990 without giving them an opportunity to rebut the noticed facts. Under Castillo-Villagra, the court determined that due process requires that the BIA give an applicant adequate warning and an opportunity to be heard before taking administrative notice in the change of government in Nicaragua. 972 F.2d 1017.
 
 
 12
 Here, the BIA took administrative notice of the changed circumstances in Nicaragua only in response to the issue as raised by the Diazes in their brief, filed with the BIA in 1990, following the change in government in Nicaragua. Despite asserting in their brief that relevant circumstances in Nicaragua had not changed and that they would still be harmed despite the change in government, the Diazes proffered no evidence to this effect. Nor did they submit a motion to reopen. By raising the issue, the Diazes had advanced notification and the opportunity to rebut properly. They simply failed to do so. Due process was afforded.
 
 III
 
 13
 Finally, the Diazes argue that a grant of asylum based on past persecution was appropriate. They charge the BIA failed to actually review their claim for asylum and instead relied on "boiler plate" language to dismiss their claim of asylum based on past persecution.
 
 
 14
 Eligibility for asylum may be based on past persecution alone. Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988); Matter of Chen, Int.Dec. 3104 at 4 (BIA1989). The BIA may grant asylum for humanitarian reasons, where an applicant or his family has suffered "under atrocious forms of persecution," even where there is little likelihood of future persecution. Id. at 5. Indeed, the court in Desir held that past persecution, without more, may satisfy the requirements of the asylum statute. 840 F.2d at 729.
 
 
 15
 The applicant in Desir presented evidence of successive and specific threats on his life on the basis of imputed political opinion and in the context of systemic human rights abuses. 840 F.2d at 729. The applicant in Chen was a Chinese Christian who had been systematically tortured, harassed, and deprived of food and necessary medical attention from the age of eight.
 
 
 16
 Certainly, the most compelling evidence to support the Diazes' claim for asylum based on past persecution are the killings of Jose's wife's aunt and uncle at the hands of the Sandinistas. The Diazes conceded, however, they did not know whether the aunt and uncle were members of a group engaged in an armed attempt to overthrow the Nicaraguan government. Further, the Diazes continued to live in Nicaragua for four or five years following these killings, without incident. Accordingly, the decision of the BIA to deny asylum based on past persecution was not an abuse of discretion.
 
 
 17
 The Diazes' Petition For Review is DENIED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Hon. Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3