103 F.3d 137
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Diosdado Y. BASCONCILLO, II, Diosdado Santos Basconcillo,
III, Barby Lee Basconcillo, III, and Angelina
Basconcillo, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70500.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 7, 1996.*
Decided Nov. 20, 1996.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, Nos. Akc-agt-ivz, Aff-mca-wtv, Akd-cct-mcg and Ajh-nfj-jgo.
 B.I.A.
 REVIEW DENIED.
 Before: HUG, Chief Judge, REAVLEY** and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Diosdado Basconcillo, his wife and two children sought political asylum and the withholding of deportation by the INS. An immigration judge conducted an evidentiary hearing on the requests and rejected them. On administrative appeal, the Board of Immigration Appeals (BIA) conducted an independent review of the record and affirmed the immigration judge's order. We affirm the decision of the BIA.
 
 BACKGROUND
 
 3
 The evidentiary record before the immigration judge consisted of the testimony of Mr. Basconcillo and certain documents. Basconcillo testified and offered a written declaration the following. He served nineteen years in the Philippine Navy, achieving the rank of lieutenant commander. He was threatened by the New People's Army (NPA), a communist guerrilla group in the Phillippines.
 
 
 4
 Basconcillo was an outspoken opponent of corruption and theft, and the NPA in particular. His brother-in-law, while in the military, had conducted an investigation of an organized crime figure named Jelly Lu. Basconcillo claimed that Jelly Lu was a member of the NPA. The brother-in-law was assassinated in 1981, and Lu was charged with the murder. Charges were eventually dropped against Lu after a key witness changed his testimony. Lu was himself assassinated in 1984.
 
 
 5
 Basconcillo never had any direct contact with Lu, was not involved in the investigation of Lu, and played no role in either assassination. In October of 1989, he was targeted by the NPA. During this year the NPA threatened his life through phone calls, blaming him for the death of Lu. As for why the NPA waited five years after Lu's death to contact him, Basconcillo claimed that at the time of Lu's death he was still a junior officer. Naval intelligence provided him with a bodyguard and driver after the threat. Basconcillo received three more threatening calls after the first one. He testified that another officer who received such threats was assassinated.
 
 
 6
 Basconcillo sent three of his children to the United States in June of 1990. A year later he sent his wife and baby here. On March 6, 1992, Basconcillo came to this country and decided to request asylum.
 
 
 7
 The record also contains a March 1992 written statement from a military officer certifying on personal knowledge that Basconcillo "has received death threats by the [NPA]," an October 1992 statement from another officer that Basconcillo "is still being threatened by the leftist group," and a 1994 statement from a third officer to the same effect.
 
 DISCUSSION
 
 8
 Basconcillo sought asylum under 8 U.S.C. § 1158(a) and withholding of deportation under 8 U.S.C. § 1253(h). Both the immigration judge and the BIA correctly recognized that the "well founded fear" standard for asylum under § 1158(a) is more generous to the alien than the "clear probability standard" under § 1253(h).[1] Both concluded that even under the more generous standard Basconcillo had not met his burden of establishing grounds for asylum.[2]
 
 
 9
 Asylum is available to a refugee from his native country who "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[3]
 
 
 10
 The burden is on the petitioner to establish refugee status by showing a well-founded fear of persecution.[4] The well-founded fear test has both a subjective and objective component.[5] The subjective component requires a showing that the alien's fear is genuine. The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts supporting a reasonable fear of persecution.[6]
 
 
 11
 Our standard of review is the substantial evidence test. We are required "to uphold the BIA's decision if it was substantially reasonable based on all the evidence," and "the court may not reverse the BIA simply because it disagrees with its evaluation of the facts."[7] The asylum applicant seeking reversal of the BIA's determination "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."[8]
 
 
 12
 While crediting Basconcillo's testimony insofar as it supported a subjective fear of persecution, the immigration judge reasoned that Basconcillo had no direct contact with the NPA between 1981 and 1989 when he began to receive threatening phone calls. This was eight years after his brother-in-law's death, and five years after the death of Jelly Lu, who seems to be the person with the closest connections to the NPA who might have been able to influence the NPA to target Basconcillo. The phone calls ceased in 1989 and Basconcillo did not flee the Phillippines until 1992. The immigration judge also found the written statements from the Filipino officers of little weight because at least one the declarants had no personal knowledge of the threats, the statements were conclusory, and it was unclear how the information came to be known to the declarants.
 
 
 13
 The record adequately supports the conclusion that Basconcillo did not establish a well-founded fear of persecution under the objective component of the test. The length of time between the threats and the murders of his brother-in-law and Jelly Lu, and the length of time he spent in the Phillippines after the threats, were appropriately considered below. "When determining the objective reasonableness of an alien's claim of well founded fear of persecution the BIA may properly consider as significant a petitioner's continued safe and undisturbed residence in his homeland after the occurrence of the event which is alleged to have induced his fear."[9]
 
 
 14
 In addition, Basconcillo did not establish, with evidence so compelling that no reasonable factfinder could conclude otherwise, that the fear of persecution was on account of his "race, religion, nationality, membership in a particular social group, or political opinion," the five statutory grounds for granting asylum.[10] We have noted that a fear of persecution based on a personal dispute or personal hostility, as opposed to the petitioner's political beliefs or views, does not fall within the statute.[11] Asylum is properly denied where the petitioner "has not shown that any guerrilla threats were made because of any political view or characteristic enumerated in the statute."[12]
 
 
 15
 To the extent that Basconcillo claimed that the NPA had targeted him because it blamed him for the death of Jelly Lu or because he was the brother-in-law of an opponent of Lu, this threat of retaliation is in the nature of a personal vendetta and not on account of Basconcillo's race, religion, political opinion, etc. Although he claimed to be an outspoken critic of corruption and theft, and the NPA in particular, he did not offer compelling evidence that he was targeted by the NPA for this reason. Similarly, although he was a member of the military, and assuming that membership in the military is a "particular social group"[13] under the statute, he again failed to offer compelling evidence that he was a target because of his military status, rather than his personal relationship to his brother-in-law or his alleged connection to the death of Jelly Lu. On the contrary, the evidence indicates that the threats were based on personal hostility arising from the investigation conducted by his brother-in-law, or from suspicion that Basconcillo was somehow involved in the assassination of Lu.
 
 
 16
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Rodriguez-Rivera v. INS, 848 F.2d 998, 1001-1003 (9th Cir.1988)
 
 
 [2]
 Basconcillo's wife and children established no independent basis for asylum; accordingly their status is the same as the "principal alien" seeking asylum. 8 U.S.C. § 1158(c); 8 C.F.R. § 208.21
 
 
 [3]
 8 U.S.C. § 1101(a)(42)(A)
 
 
 [4]
 Castillo v. INS, 951 F.2d 1117, 1121 (9th Cir.1991)
 
 
 [5]
 Id
 
 
 [6]
 Id
 
 
 [7]
 Castillo, 951 F.2d at 1120
 
 
 [8]
 INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)
 
 
 [9]
 Castillo, 951 F.2d at 1122
 
 
 [10]
 8 U.S.C. § 1101(a)(42)(A)
 
 
 [11]
 Zayas-Marini v. INS, 785 F.2d 801, 805-06 (9th Cir.1986)
 
 
 [12]
 Cuadras v. INS, 910 F.2d 567, 571 (9th Cir.1990)
 
 
 [13]
 See Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir.1991) ("We hold that the military is not a social group qualifying its servicemen or former servicemen for asylum treatment."); but see Montecino v. INS, 915 F.2d 518, 520 (9th Cir.1990) (suggesting that status as a former soldier in the army of El Salvador entitles the petitioner to asylum, if the petitioner can also establish a well-founded fear of persecution)