133 F.3d 927
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Aurelio Cosico LA GUARDIA, aka Aurelio Corsico Laguardian, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70860, Aqf-qkr-avs.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 3, 1997.**
Decided Dec. 17, 1997.
 
 Petition to Review a Decision of the Immigration and Naturalization Service
 Before: WOOD,*** RYMER, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Aurelio Cosico La Guardia, a Philippine national, petitions for review of the Board of Immigration Appeals' dismissal of his appeal from an immigration judge's denial of his application for asylum and withholding of deportation. We deny the petition.
 
 
 3
 * La Guardia argues that he established a well founded fear of future persecution based on past persecution by the military. We disagree.
 
 
 4
 * The Attorney General has discretion to grant asylum to an applicant who is unwilling to return to his native country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). We review the BIA's determination of eligibility for substantial evidence, reversing "only if the evidence presented to the Board was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992) (citing INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)).
 
 B
 
 5
 There is no dispute that La Guardia suffered persecution in the past. However, he contends that the INS did not rebut the presumption of future prosecution, 8 C F.R. § 208.13(b)(1)(i), but instead, the BIA presumed that it was unlikely that he would suffer any future persecution. We disagree that the BIA so presumed, as it clearly stated that La Guardia had established a presumption of future persecution based on a showing of past persecution by the military. Instead, the BIA found that the presumption was rebutted by evidence in the record.
 
 
 6
 The INS may rebut the presumption by showing that there is little likelihood of present persecution, which it can do by evidence that country conditions nave changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return. 8 C.F.R. § 208.13(b)(1)(i); Matter of Chen, 20 I & N Dec. 16 (BIA 1989). Here, there is substantial support for the BIA's decision. While La Guardia did show that he was abducted and tortured by the military in 1989 on account of his involvement with the NPA before the fall of the Marcos regime, he lived without difficulty in Manila, where he worked as a electronics contractor, and ran his own shop with his wife in San Pablo City, until he left the Philippines on a government passport issued in his name in June, 1992. See, e.g., Castillo v. INS, 951 F.2d 1117 (9th Cir.1991) (five year undisturbed residence after single series of interrogations indicates lack of well-founded fear); Rodriquez-Rivera v. INS, 848 F.2d 993 (9th Cir.1988) (obtaining passport from the government undercuts claim of well-founded fear). His wife (who was abducted with La Guardia in 1989) has continued to live in Manila with no other incidents involving the military. Conditions in the country have changed significantly, illustrated in part by the government's offer and grant of asylum to dissidents who give up their arms. See, e.g., Kazlauskas v. INS, 46 F.3d 902, 906 (1994) (holding that an alien could not establish well-founded fear of persecution because of the political and social changes in the Baltic Republics). Likewise, the NPA is no longer a force as it was in 1989, having lost 70% of its members with a current presence in only two percent of townships. No evidence found credible by the BIA suggests that the military is likely to have any interest today in La Guardia's pre-1989 knowledge about NPA's operations. Accordingly, we cannot say that the presumption was not rebutted or that the evidence compels a conclusion that La Guardia has a well-founded fear of persecution.[1]
 
 II
 
 7
 La Guardia contends that the BIA abused its discretion in concluding that he was not statutorily eligible for asylum because of his past membership with a terrorist group, the NPA. However, the BIA did not rest its decision on this ground; it merely mentioned La Guardia's association with the NPA "in passing," and explicitly stated that its decision was not based on whether or not he is ineligible for relief on that account.
 
 III
 
 8
 La Guardia argues that even though he may not have met the statutory requirements for asylum, the BIA abused its discretion when it failed to consider granting asylum based on humanitarian considerations. See Matter of Chen. However, the Board recognized that it had discretion to grant asylum in cases where the alien establishes past persecution with little threat of future persecution under the general humanitarian principle articulated in Matter of Chen. While it made no specific findings on this aspect of its discretion, the BIA did state that it agreed "with the Immigration Judge's decision denying the respondent asylum." The IJ specifically concluded based on the record that there was no compelling basis to grant asylum on the ground that it would otherwise be inhumane to send La Guardia back to the Philippines. As the BIA adopted the IJ's decision in this respect, we are satisfied that the Board's conclusion that La Guardia is not entitled to asylum is both reviewable and supported. Rodriguez-Matamoros v. INS, 86 F.3d 158 (9th Cir.1996) (explanation must be sufficient to see that Board has heard, considered, and decided Chen issue). The persecution experienced by La Guardia, although traumatic for him, was unlike the persecution suffered by Chen, who, as the son of a Christian minister growing up in China during the Cultural Revolution, was locked Ln a room for six months, was repeatedly beaten and humiliated throughout his childhood, was constantly ostracized, and as a result, was physically debilitated, wore a hearing aid, and was suicidal. Therefore, the BIA did not abuse its discretion in failing to grant asylum on humanitarian grounds.
 
 
 9
 PETITION DENIED.
 
 TASHIMA, Circuit Judge,. dissenting, in part:
 
 10
 I concur in all of the majority's disposition, except Part III, from which I respectfully dissent.
 
 
 11
 With respect to asylum based on humanitarian grounds, the majority concedes that the BIA "made no specific findings on this aspect of its discretion," indicating only that "it agreed with the IJ's decision." This is precisely what the BIA may not do. Where, as here, the BIA "exercises:its power to conduct a de novo review of the record, our review is limited to the decision of the Board except to the extent that the IJ's opinion is expressly adopted by the Board." Ghaly v. INS, 58 F.3d 1425, 1430 (9th Cir.1995) (citation omitted). Thus, the majority errs in first reviewing the BIA's decision in Parts I and II, and then switching to a review of the IJ's decision in Part III.
 
 
 12
 Further, and contrary to the majority's assertion, the BIA's decision nowhere indicates that "it agreed with the IJ's decision." As the dissenting BIA member in this case noted:
 
 
 13
 Upon finding that the respondent's well-founded fear of future persecution from the military was not viable, the majority apparently did not feel it necessary to address the discretionary factors involved in granting or denying an asylum application. Id. See also Matter of Chen, 20 I & N Dec. 16 (BIA 1989). This is error, however, as both Board regulations and case law require that humanitarian and compelling factors be considered. Id. The majority, and the Immigration Judge, completely fail to discuss humanitarian concerns, thereby leaving out an important aspect of the determination whether to grant or deny asylum: the discretionary determination.
 
 
 14
 I agree. As we have noted, "[t]he BIA's opinion, however, cannot be mere 'Boilerplate' and must describe 'with sufficient particularity and clarity the reasons for denial of asylum.' " Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994) (quoting Castillo v. INS, 951 F.2d 1117, 1121 (9th Cir.1991)).
 
 
 15
 [W]e have no idea what factors the BIA considered or relied upon. As we have previously noted, "[i]n order for this court to properly review the Board's determination, 'we must understand the basis for its decision and how it arrived at the findings underlying that decision.' " This is particularly so in Chen cases, because in Chen itself, the BIN acknowledged that it was not "attempt[ing] at this time to delineate the circumstances under which past persecution may or may not be the basis for a successful asylum claim."
 
 
 16
 At a minimum, the BIA must provide an explanation "sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided."
 
 
 17
 Rodriguez-Matamoros v. INS, 86 F.3d 158, 161 (9th Cir.1996) (citations omitted).
 
 
 18
 I cannot agree that, here, the BIA provided such an explana:ion. Because the BIA did not articulate any reasons for denial of asylum based on humanitarian grounds, I would remand the case to the BIA for such consideration.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 * Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 La Guardia does not argue on appeal that his fear of persecution by the NPA is also well-founded, as he did before the BIA. That argument is, therefore, waived